21268. DAVIS, Executrix, *et al. v.* NEWTON.

ARGUED JUNE 12, 1961—DECIDED JULY 6, 1961.

*Stevens, Fortson, Bentley & Griffin,* for plaintiffs in error.

*Larry v. McLeod,* contra.

CANDLER, Justice. The nature of this litigation may be readily ascertained from the opinion this court filed on its prior appearance. See *Davis v. Newton,* 215 Ga. 58 (108 SE2d 809). The first trial of this case, as well as the one now under review, resulted in a verdict for the plaintiff, and on each such verdict title to the land involved was decreed to be in the plaintiff, and the defendants were permanently enjoined from interfering in any way with her ownership of the property involved. On a review of the first trial, this court held that the evidence was sufficient to support the verdict, but a new trial was ordered solely because of the court's failure to charge on the defense of laches, which was raised by both the pleadings and the evidence. On both trials the evidence was in all material respects substantially the same, and the defendants being dissatisfied with the second verdict moved for a new trial on the usual general grounds and by amendment added certain special grounds, in which they complain about different portions of the court's charge and of the failure to give a particular charge. Their amended motion was denied and the exception is to that judg-

ment. Since this case involves a transaction which allegedly occurred during the latter part of April, 1936, between a daughter-in-law and her mother-in-law, and since the name of each has subsequently changed (the daughter-in-law's once, and the mother-in law's three times), we will, whenever it is necessary to do so, refer to the former as "Mrs. Newton" and to the latter as "Mrs. Dunson."

The evidence in this case shows that Mrs. Dunson purchased the property involved from Mrs. Ester Goldwasser on January 23, 1935, for $1,000. She paid $500 on the purchase price, and gave Mrs. Goldwasser a note for $500, due 3 years after date with interest from date at 7% per annum, payable semi-annually for the unpaid part of the purchase price. She gave Mrs. Goldwasser a deed to the property so purchased as security for the payment of her note. The note provided that, if the interest was not paid as it matured, the entire obligation would become due and payable on such default. She defaulted in the payment of interest, and the note was placed in the hands of an attorney for collection. Suit was brought on the note in the City Court of Clarke County, and by that proceeding she sought and prayed for a special lien against the property. While such suit was pending and during the latter part of April, 1936, Mrs. Dunson approached Mrs. Newton, her daughter-in-law, and stated to her that, because of her natural love and affection for her and in order to avoid the expense and embarrassment of the pending suit, she would give the property to her. Mrs. Newton promptly accepted the gift, and pursuant to the terms of Mrs. Dunson's offer, she borrowed $550 from her father-in-law and paid it to Mrs. Dunson. With such funds, Mrs. Dunson paid her note to Mrs. Goldwasser in full. The paid note was delivered to Mrs. Dunson, the deed given to secure its payment was canceled of record, and the suit against Mrs. Dunson was dismissed. During 1937 or 1938, W. A. Cooper tried to purchase the property involved from Mrs. Dunson, who told him that it did not belong to her but belonged to Mrs. Newton. Under the claim of ownership which she acquired from Mrs. Dunson, Mrs. Newton made permanent improvements on the property involved from the latter part of April, 1936, until 1940, at a cost of approximately

$3,000. She bought cattle in 1936 and placed them in a small pasture on the farm, and during the same year she had laborers begin clearing and fencing more land on the farm for pasturage, and continued to do so until 1940, at which time she had approximately 20 acres under fence for her cattle. She kept her cattle in the pasture until 1952 or 1953. The house, barn, and outbuildings were wired for electricity at a cost to her of approximately $300. She had the house painted on the inside and outside for the first time. She had the house screened, underpinned, and the foundations braced with rock pillars, and fenced the back yard. The front and back steps were rebuilt at her expense. She added a room and porch to the house and planted shrubbery. A new barn was built in 1939 or 1940 at a cost to her of $1,500, and it was partly reroofed by her in 1949. Mrs. Dunson and her husband moved away from the farm in 1937 or 1938 and lived on his daughter's farm until his death; after that, Mrs. Dunson moved to a rented room in Athens. She moved every month or two, returning to the farm and then going back to town. In 1938 Mrs. Newton rented the farm to the Paynes for a year. In 1940 Mrs. Newton, her husband, and her mother moved to the land involved and lived there about a year and a half. For the years 1941 and 1942, Mrs. Newton rented the house on the farm to H. O. Beussee for $20 per month, and the rent was paid to her. Mrs. Dunson on February 17, 1947, obtained from her husband a quitclaim deed to the property in controversy, which was filed for record on May 2, 1947. After 1947 a Mrs. Osborne talked to Mrs. Dunson about renting the house. Mrs. Dunson told her that she would have to discuss the proposition of renting it with Mrs. Newton. Mrs. Osborne later rented the house from Mrs. Newton, and paid the rent to her during 1948, 1949, and 1950. Mrs. Osborne's son took care of the cattle which Mrs. Newton kept on the farm while the Osbornes had it rented, and Mrs. Osborne made repairs to the barn, steps and pasture fence for Mrs. Newton. Mrs. Newton kept the property in repair, maintained a telephone there, added at her expense necessary improvements from 1936 to 1957, and the soil bank contract was in her name. Mrs. Newton consented for Mrs. Dunson to borrow money and give liens on the prop-

erty involved after she acquired her interest in it because Mrs. Dunson was on "welfare." Mrs. Dunson was living on the land at the time of her death, but Mrs. Newton at that time had household furniture stored on the premises.

1. The evidence was amply sufficient to support the verdict; hence, the general grounds of the motion for a new trial are not meritorious.

2. On the trial of this case, the judge charged verbatim *Code* § 37-119, which provides: "Equity gives no relief to one whose long delay renders the ascertainment of the truth difficult, though no legal limitation bars the right." It is alleged in special ground 7 of the motion that the court, after charging this Code section, erred in also charging: "However, I further charge you upon the subject of laches. It was held by the Supreme Court in deciding upon a former trial of this case and that becomes, so far as is decided there, the law of this case. 'One who is in possession of property under a claim of ownership will not be guilty of laches for delay in resorting to a court of equity to establish his rights.'" It is alleged that this instruction was erroneous, because (a) it was confusing and misleading in referring to the decision of the Supreme Court as "the law of the case"; (b) it was prejudical to the defendants in giving undue judicial emphasis to the principle adjudicated by the Supreme Court; and (c) it deprived the defendants of the defense of laches. Special ground 8 alleges that the court in charging on laches also erred in stating to the jury that "Our Supreme Court in Volume 191 [at page 286] held: 'The rule as to laches should work both ways. If both parties are equally to blame for the delay, neither should be allowed to invoke the rule in order to gain an advantage over his adversary.'" With respect to this portion of the charge, it is alleged that it was erroneous and injurious to the defendants, because (a) it was not supported by any issue or evidence in the case; (b) it was argumentative against the defense of laches; and (c) it intimated an opinion that the defense of laches involved some improper advantage and should be questioned. Neither of these grounds of the motion shows any sufficient reason for reversing the judgment denying a new trial in the instant case. Each complained-of portion

of the charge stated a correct principle of law, which was adjusted both to the pleadings and to evidence which the parties introduced on the trial respecting possession of the property involved during the period from the latter part of April, 1936, until the death of Mrs. Dunson on April 25, 1957, and since the charge as a whole correctly instructed the jury on the defense of laches, these grounds are not meritorious. However, it is the better practice, we think, for the trial judge to charge the law applicable to the case on trial without making specific reference to the holding in any particular case of this or any other appellate court on such question. See 53 Am. Jur. 433, § 543, and 88 C.J.S. 887, § 337 (c), and the citations on which the authors based their statements.

3. It is alleged in another special ground of the motion for new trial that the court erred in giving the following charge: "When a witness has been successfully impeached, in your judgment, by one of the legal methods, that is where his, or her, unworthiness of credit is absolutely established in the minds of the jury, then he or she ought not to be believed, and it is the duty of the jury to disregard his or her testimony unless it is corroborated, in which case you may believe it, it being as a matter of course always for the jury to determine whether a witness has or has not in fact been successfully impeached." Movants contend that this portion of the charge was unsound as a matter of law and therefore prejudicial and harmful to them. There is no merit in this contention. The same charge was given by the trial judge and approved by this court in *Hamilton v. State,* 143 Ga. 265 (4) (84 SE 583), *Landers v. State,* 149 Ga. 482 (100 SE 569), and *Weatherby v. State,* 213 Ga. 188, 195 (7) (97 SE2d 698). See also *Powell v. State,* 101 Ga. 9 (5) (29 SE 309, 65 ASR 277).

4. Another special ground of the motion complains of the following portion of the charge: "I charge you further that if upon a consideration of the evidence in this case you find there is a conflict in the testimony between the witnesses, or a conflict between a witness or witnesses and the documentary evidence, it is your duty to reconcile this conflict, if you can, without imputing perjury to any witness; if you cannot do that, it then be-

comes your duty to believe that witness or those witnesses you may think best entitled to belief . . ." Movants contend that (a) this portion of the charge was erroneous and unsound as an abstract principle of law; (b) it made it the duty of the jury to believe oral testimony in preference to documentary evidence; and (c) it deprived the jury of their right to decide what evidence they would believe. The criticism lodged against this portion of the charge is not meritorious; this is true since the judge, in immediate connection with the complained-of portion and as a continuation of it, further charged: "But the jury, as stated, are at last the sole and exclusive judges of what witnesses they will believe or disbelieve and what testimony they will credit or discredit." Hence, we do not think that the charge on this subject when considered in its entirety amounts, as movants contend, to an instruction that the jury should believe the oral testimony of any witness or witnesses in preference to any documentary evidence introduced on the trial. A ruling to the contrary would in our opinion impute to the jury which tried this case a lack of ordinary intelligence and understanding; and this is so for the reason that the judge in giving the portion of the charge complained of, and as a part of it, expressly and emphatically instructed the jury that they were the sole and exclusive judges of what witness or witnesses they would believe or disbelieve and what testimony they would credit or discredit. As authority for this ruling, see *Brown v. Matthews,* 79 Ga. 1 (4 SE 13); *Western & Atlantic R. Co. v. Tate,* 129 Ga. 526 (3), 529 (59 SE 266); *Sims v. State,* 177 Ga. 266 (5) (170 SE 58); *Smith v. State,* 179 Ga. 791 (2) (177 SE 711); *Quinton v. Peck,* 195 Ga. 299 (4) (24 SE2d 36); *Buttersworth v. State,* 200 Ga. 13 (36 SE2d 301); *Sutton v. State,* 212 Ga. 673 (1) (95 SE2d 1); and *Clark v. State,* 216 Ga. 459 (117 SE2d 160), and the cases there cited. In *Smith's* case, supra, where the accused was convicted of murder, the court charged the jury as follows: "Now, if upon consideration of the evidence in the case you find there is conflict in the witness or the witnesses and the defendant's statement, it is your duty to reconcile this conflict, if you can, without imputing perjury to any witness, and without imputing a false statement to the defendant, if you can do so. If you cannot

do that, it then becomes your duty to believe that witness or or those witnesses, you think most entitled to belief in this case." The charge as there given was assigned as error on the ground that it restricted the right of the jury to believe the defendant's statement in preference to the sworn testimony. In disposing of the exception, this court, speaking through Justice Bell, unanimously held: "Since it appears that in another part of his charge the court clearly and properly instructed the jury as to their right to believe the defendant's statement in preference to the testmiony, the charge complained of, though not approved as being entirely apt and proper, does not constitute reversible error." And in *Sutton's* case, supra, where the opinion was prepared and delivered for the court by Chief Justice Duckworth, it was said: "The complaint and the excerpt complained of are similar to those considered in *Sims v. State*, 177 Ga. 266 (5) . . . and *Smith v. State*, 179 Ga. 791 (2) . . .; and when considered in the light of the entire charge the excerpt was not harmful to the accused nor did it minimize or disparage or tend to influence the jury to disregard the defendant's statement and believe the testimony and reject the statement, and this ground is without merit. See also *Emmett v. State*, 195 Ga. 517 (4) (25 SE2d 9)."

5. It is alleged that the judgment complained of should be reversed because the judge instructed the jury as follows: "I charge you further that declarations or statements made by a person in possession of property in disparagement of his or her own title is competent evidence, and if you find from the evidence that the purported donor made such statement while in possession of the property, you are authorized to consider the statement in favor of the plaintiff along with all the other evidence." And because he also instructed the jury as follows: "I charge you further that declarations or statements made by a person since deceased against his or her interest and not made with a view to litigation then pending is competent evidence." These grounds are without merit. See *Code* §§ 38-308 and 38-309; also *Bowman v. Owens*, 133 Ga. 49 (6) (65 SE 156). Nothing ruled in *Flowers v. Flowers*, 92 Ga. 688 (18 SE 1006), which is relied on by the plaintiffs in error, requires a ruling different from the one here made.

■

6. Movants allege that the following extract from the charge was erroneous: "I charge you that it is not sufficient to defeat the plaintiff's contention by showing that the donor has paid the taxes upon the property if you should find from the evidence that the gift was made under the circumstances as given you in charge." This portion of the charge does not for any reason stated show reversible error. Payment of taxes on property is not evidence of title and ownership thereof. *Mitchell v. Gunter*, 170 Ga. 135, 146 (152 SE 466) and *Chamblee v. Johnson*, 200 Ga. 838 (2) (38 SE2d 721). In the *Chamblee* case the court said: "While the payment of taxes is not itself evidence of title, yet it is admissible as a circumstance tending to prove adverse possession."

7. Special ground 10 alleges that the court erred in failing to charge the jury that the plaintiff would not be entitled to prevail unless her possession of the property involved was shown by the evidence to be actual, definite, and exclusive of the donor. As authority for this contention, movants rely on *Kinderland v. Kirk*, 131 Ga. 454 (62 SE 582), and *Milton v. Milton*, 174 Ga. 92 (162 SE 543). These cases are not in point and afford no authority for the position here taken. They simply hold that, where partial payment, accompanied by possession, is relied upon to take a parol contract for the sale of land out of the operation of the statute of frauds, the possession of the vendee must be actual, definite, and exclusive of the vendor, and with the express or implied consent of the vendor. From the evidence in this case the jury was fully authorized to find that the plaintiff, Mrs. Newton, acquired a perfect equitable title to the property in controversy from Mrs. Dunson, a title which would, as to her, be the equivalent of legal title and which would support an action in ejectment brought by her against anyone in possession of the property. See *Code Ann.* § 37-802; *Evans v. Sawilowsky*, 179 Ga. 547 (4) (176 SE 625); and *Waycross Military Association, Inc. v. Hiers*, 209 Ga 812 (2) (76 SE2d 486) and the several cases there cited. Hence, there is no merit in this special ground of the motion.

8. The remaining special grounds have either been sufficiently dealt with in the preceding divisions of this opinion or, after being carefully examined, are found to be without merit.

*Judgment affirmed. All the Justices concur.*