## A89A0601. PINSON v. HARTSFIELD INTERNATIONAL COMMERCE CENTER, LTD.
### (382 SE2d 136)

BANKE, Presiding Judge.

The appellee, Hartsfield International Commerce Center, Ltd., filed suit against the appellant, William Pinson, seeking to recover damages for Pinson's alleged breach of a commercial lease agreement. Pinson had signed the lease as "president and owner" of the tenant, which was identified as "Pinson Air Freight, Inc." However, the complaint alleged that there was no corporation by that name and further alleged that " 'Pinson Air Freight, Inc.' apparently was a fictitious or unregistered trade name used by [Pinson] for his freight business conducted in Georgia." Pinson denied any personal obligation on the lease, asserting that he had signed solely in his representative capacity as president of "Pinson Air Freight of Chattanooga, Inc." At the conclusion of a non-jury trial, the court determined that Pinson had "intended to act in his own capacity in transacting business at the location in question" and consequently entered judgment in favor of the appellee. Pinson appeals.

It is undisputed that Pinson is in fact the president and sole shareholder of a Tennessee corporation named Pinson Air Freight of Chattanooga, Inc., which was formed in 1973 and is headquartered in Chattanooga, Tennessee. In conducting its day-to-day business operations, this company has routinely dropped the words "of Chattanooga" from its name, referring to itself as "Pinson Air Freight, Inc.," or sometimes simply as "Pinson Air Freight." While the company has never registered either of these abbreviated names as corporate trade names, neither has Pinson ever registered them as personal trade names.

In 1985, Pinson was contacted at the corporate headquarters of Pinson Air Freight of Chattanooga, Inc., by A. C. Dorminy, who sought to interest him in renting certain commercial real estate owned by the appellee in Clayton County, near Hartsfield International Airport in Atlanta. Dorminy was both a general partner of the appellee (which is a limited partnership) and vice-president of a corporation known as Southeast Management and Leasing Corporation (hereafter referred to as Southeast), which was formed by the general partners of the appellee to manage the affairs of the limited partnership. Following a period of negotiations between Pinson and the appellees' agents, conducted via communications to and from Pinson's Chattanooga office, the lease agreement which is the subject of this litigation was executed on July 30, 1985. The agreement was drafted by the appellee. Although it identified "Pinson Air Freight, Inc.," as the tenant, it provided, as that company's address, the Chattanooga address of Pinson Air Freight of Chattanooga, Inc.

Pinson's air freight firm, by whatever name, took possession of the leased premises in June of 1986. During August or September of 1987, Dorminy asked Pinson to provide a personal guaranty of the tenant's obligations under the lease, but Pinson refused. The premises were vacated in November of 1987; and Pinson Air Freight of Chattanooga, Inc., subsequently filed bankruptcy proceedings under Chapter 11 of the United States Bankruptcy Code. The appellee did not file a claim against the corporation in the bankruptcy proceedings, electing instead to file the present action against Pinson personally.

It is undisputed that all bills for the Atlanta operations of Pinson's air freight business, including the rental payments for the leased premises, were paid from Chattanooga with checks drawn on a Chattanooga bank. These checks identified "Pinson Air Freight, Inc.," as the payor but listed, as the payor's address, the Chattanooga address of Pinson Air Freight of Chattanooga, Inc. It is also undisputed that all of the income and expenses attributable to the Atlanta operations of the business were included on the federal income tax returns filed by Pinson Air Freight of Chattanooga, Inc., and that Pinson's personal finances were not commingled in any way with those of the corporation.

In support of its position that Pinson was operating the Atlanta office in a personal capacity, the appellee produced evidence that Pinson had submitted an application for a local business license for the Atlanta office in June of 1986, in which he had identified the name of the business as simply "Pinson Air Freight" and had put down his own name and home address in the space designated for "Name & Address of Owner(s)." Additionally, the appellee proved that Pinson Air Freight of Chattanooga, Inc., was not registered with the Georgia Secretary of State to do business in Georgia; that neither Pinson Air Freight nor Pinson Air Freight, Inc., had ever been registered as a trade name by Pinson Air Freight of Chattanooga, Inc.; and that Pinson had previously been an officer in a Georgia corporation named Pinson Air Freight and Transport, Inc. However, Pinson testified that the latter corporation had been started by his father, that he had owned no stock in it, and that its assets had been sold to Pinson Air Freight of Chattanooga, Inc., in 1983. *Held*:

Although the concept of de facto corporations has been eliminated in this state by OCGA §§ 14-2-23 and 14-2-173, the doctrine of corporation by estoppel is still alive and well. See OCGA § 14-5-4; *Cahoon v. Ward*, 231 Ga. 872 (204 SE2d 622) (1974). "The general rule in this state is that a person who contracts or deals with a corporation as such will be estopped to deny its corporate existence in an action arising out of or involving the contract. Our appellate courts have stated many times that when a person enters into a contract

with an entity purporting to be a corporation, and such entity is described in the contract by its corporate name, such person admits the legal existence of the corporation with reference to any action brought to enforce the contract, and for the purpose of that action will not be allowed to question the legality of the corporate existence." Id. at 874.

In a situation where the existence of the corporate entity is questioned, the controlling factor in determining whether the estoppel doctrine applies is whether the entity on whose behalf the person entering into the contract purported to act had been issued a certificate of incorporation before the contract was executed. If not, then the contracting agent will be held personally liable for the obligations of the purported corporation thus incurred. See OCGA § 14-2-23; *Don Swann Sales Corp. v. Echols*, 160 Ga. App. 539 (287 SE2d 577) (1981); *Echols v. Vienna Sausage Mfg. Co.*, 162 Ga. App. 158 (2) (290 SE2d 484) (1982). However, where the individual in question purported to act on behalf of a corporation which did in fact exist, the fact that the corporation's name was incorrectly set forth on the contract will not necessarily result in the imposition of personal liability against him.

" 'An undertaking by an individual in a fictitious or trade name is the obligation of the individual.' [Cit.] Similarly, 'if a contract is entered into by an agent in the name of a nonexistent principal, the inference is that the agent is bound on it.' [Cit.] However, a mere '*misnomer* of a corporation in a written instrument, or in a law, or in a judicial proceeding is not material or vital in its consequences, *if the identity of the corporation intended is clear or can be ascertained by proof.*' [Cit.] 'A corporate name usually consists of several words, and an omission . . . of one or more is not so likely to confuse and mislead, or to hide the identity of the entity intended, as would be the case as to natural persons. The important thing is to determine what corporation the parties intended, for it is the intent of the parties that controls. Error in the use of the corporate name will not be permitted to frustrate the intent which the name was meant to convey, and to find out the identity of the corporation intended, resort may be had to evidence aliunde.' [Cit.]" *Hawkins v. Turner*, 166 Ga. App. 50, 51-2 (303 SE2d 164) (1983). (Emphasis from original.)

Although there is no question in the present case that in negotiating the lease with Pinson the appellee's agents thought they were dealing with a corporation, the appellee contends that "it can now claim otherwise since no such corporation existed." We disagree that no such corporation existed. While it is true that no corporation named "Pinson Air Freight, Inc.," existed, we believe, on the basis of *Hawkins v. Turner*, supra, that the evidence in this case established beyond dispute that the name "Pinson Air Freight, Inc.," was used as a misnomer for Pinson Air Freight of Chattanooga, Inc., which did

exist.

The individual sought to be held liable in *Hawkins v. Turner*, had executed a contract on behalf of a corporation identified as "Hawkins Plumbing Co., Inc." As it turned out, there was no corporation by that name; but there was a corporation named "Hawkins Heating & Plumbing Co., Inc.," of which the individual in question was the major shareholder. Although the name "Hawkins Plumbing Co., Inc.," had not been registered by Hawkins Heating & Plumbing Co., Inc., as a trade name, we held that such an omission would not warrant the entry of summary judgment against the individual, concluding "that an agent who executes a contract using a misnomer of a corporation is not *as a matter of law* conducting business either in a fictitious or trade name or in the name of a nonexistent principal." Id. at 52. (Emphasis from original.)

It appears without dispute from the evidence presented at the trial of the present case that the operations being carried out at the leased premises were in fact the operations of a corporation. It further appears without dispute that Pinson was neither conducting business in this state in an individual capacity nor commingling his personal finances with those of his corporation. Under such circumstances, we find no basis for a finding that he contracted with the appellee in his personal capacity rather than as agent for a disclosed principal. We reject the appellee's contention that such an inference may be drawn from the manner in which he (Pinson) completed the application for the local business license. Pinson's identification of himself on that application as the owner of "Pinson Air Freight" was fully consistent with his testimony that Pinson Air Freight of Chattanooga, Inc., often did business under that name and that he owned 100 percent of the shares of the corporation. The appellee could not, in any event, have been misled by the license application, inasmuch as it did not become aware of the contents of the application until after the present litigation was initiated.

The appellee's reliance on *Guernsey Petroleum Corp. v. Data Gen. Corp.*, 183 Ga. App. 790, 795 (3) (359 SE2d 920) (1987), is misplaced. There, the defendant sought to avoid individual liability for certain actions which, he maintained, he had undertaken in his capacity as president of a corporation known as ISC. We held that an inference that the defendant had been acting on his own behalf rather than as agent for a corporation could be drawn from the fact that the name ISC was registered as a trade name for himself and his sister. Accord *Clement Plumbing &c. Co. v. Goodwin*, 130 Ga. App. 245 (202 SE2d 684) (1973). In the present case there is no evidence that Pinson ever registered the names "Pinson Air Freight" or "Pinson Air Freight, Inc.," as trade names for himself.

Similarly, no inference that Pinson was conducting the opera-

tions of his Atlanta office in an individual rather than a corporate capacity may be drawn from the fact that the corporation had failed to register with the Secretary of State to do business in Georgia. "[Although a] corporation may not maintain a suit in this state while it is not certified, . . . it is not prevented from defending an action brought against it. In brief, the law denies it certain rights and privileges but does not deny its *existence*. Hence, the fact that [the corporation] was unauthorized [to do business in this state] within the meaning of the Georgia Business Corporation Code would not mean that the [appellant] was acting for a nonexistent principal." *Evans v. Smithdeal*, 143 Ga. App. 287, 291 (238 SE2d 278) (1977).

There being no evidence from which it could reasonably be inferred that Pinson contracted with the appellee in an individual capacity rather than as an agent for a disclosed principal, we hold that his defense to the appellee's claim was valid as a matter of law, with the result that the trial court erred in denying his motion for involuntary dismissal of the complaint. See generally OCGA § 9-11-41 (b).

*Judgment reversed. Sognier and Pope, JJ., concur.*

DECIDED APRIL 20, 1989 —
REHEARING DENIED MAY 5, 1989 — 

*Hine & Carroll, Paul T. Carroll III, William A DuPree IV*, for appellant.

*Davis, Kirsch & Wolfe, Dock H. Davis*, for appellee.