## S96A1209. CURRY v. CURRY.
### (473 SE2d 760)

FLETCHER, Presiding Justice.

Cordelia Simmons signed a deed in 1988 conveying property to her grandson, appellant Enos Charles Curry. Her attorney completed the property description and delivered the deed to the grandson who

recorded it. Simmons' son and guardian, appellee James Curry, filed a complaint in 1995 against his son Charles, seeking ejectment and a declaratory judgment. The issue on appeal is whether the grandson is entitled to reformation of the 1988 deed based on the mistaken description of the property. Because any error in the deed was a mutual mistake of both parties, we conclude that the grandson is entitled to reformation and reverse.

Simmons instructed her attorney to prepare a deed conveying the home place lot to her grandson. When she signed the deed, the space for the property description was blank. Simmons' attorney added a description of an adjoining lot that she had previously conveyed and delivered the deed to her grandson. Neither the grantor nor grantee read the deed at any time. The grandson recorded the deed and built a mechanic shop on the home place lot. After Simmons was declared incompetent and her son was appointed as her guardian, he filed a complaint on her behalf for ejectment and declaratory judgment against her grandson. The trial court granted the son a writ of possession to the home place lot, denied the grandson's counterclaim seeking reformation of the deed, and declared that Cordelia Simmons held title to the property. The grandson appeals.

1. Equity may intervene and reform a conveyance when the instrument fails to express accurately the intention of the parties.[1] " 'A petition for reformation of a written contract will lie where by mistake of the scrivener and by oversight of the parties, the writing does not embody or fully express the real contract of the parties.' "[2] The cause of the defect is immaterial so long as the mistake is common to both parties to the transaction.[3] And the negligence of the complaining party will not defeat his right to reformation if the other party has not been prejudiced.[4] Based on these principles, we have affirmed the reformation of a deed that erroneously included in the description a lot that the owner had previously conveyed.[5]

The record shows that both Simmons and her grandson intended for the written instrument to convey the home place lot. The grantor told her attorney that she wanted to give her grandson the property "where the house sits" and the grandson thought he had received a deed to that property. Within a month of executing the deed, Simmons told her granddaughter that she had deeded her home and land

[1] See OCGA §§ 23-2-25; 23-2-30.

[2] *McLoon v. McLoon*, 220 Ga. 18, 19 (136 SE2d 740) (1964) (quoting *Williams v. Hudgens*, 217 Ga. 706, 710 (124 SE2d 746) (1962)).

[3] *Gauker v. Eubanks*, 230 Ga. 893 (199 SE2d 771) (1973).

[4] *Sheldon v. Hargrose*, 213 Ga. 672, 675 (100 SE2d 898) (1957); *McCollum v. Loveless*, 187 Ga. 262, 267 (200 SE 115) (1938) (finding no prejudice in reforming deed "so as to make it speak the truth").

[5] See *Sheldon*, 213 Ga. at 677.

behind it to her grandson. In 1989, the grantee consulted with his grandmother about the lot's boundary lines and cleared the land to construct his shop. When questioned, he told his father that he had received a signed deed from his grandmother. Moreover, Simmons visited and ate lunch with the workers during the shop's construction. It was only after she was declared incompetent and her son filed this ejectment action that the grantee learned that the deed conveyed the wrong lot. There is no evidence that Simmons intended to convey the exact property described in the 1988 deed, as the trial court found, since she had previously conveyed the property.

Under these circumstances, we find that the error in the deed describing a lot that the grantor had already conveyed was a mistake common to both parties. Since the grandson acted promptly after learning about the mutual mistake and any delay in seeking relief applies equally to both parties, Simmons may not invoke the rule of laches.[6] We hold that the grandson is entitled to a reformation of the deed to correct its erroneous description.

2. Among the essential elements of a deed are a written instrument, description identifying the land, grantor's signature, and delivery to the grantee.[7] The 1988 deed met these requirements. Simmons executed a deed that contained all the necessary writings except the legal description. Simmons' attorney, acting under her authority, inserted the description after she signed the deed but before he delivered it to the grantee. Thus, unlike the cases in which a deed signed in blank was held void, neither the grantee nor his agent filled in the deed's legal description.[8] Because the grantor's agent delivered a deed that was complete and ready to record, we conclude as a matter of law that the 1988 deed was not void.

*Judgment reversed. All the Justices concur, except Carley and Thompson, JJ., who dissent.*

CARLEY, Justice, dissenting.

Mrs. Cordelia Simmons owned a tract of land, a portion of which she conveyed in 1968 and the remaining portion of which she retained as her home place. In 1988, Mrs. Simmons executed a deed which named as grantee her grandson, Enos Curry (Grandson). According to its legal description, this deed did not convey Mrs. Simmons' home place. Instead, the deed purported to convey to Grandson

---

[6] See *Parker v. Fisher*, 207 Ga. 3, 6 (59 SE2d 715) (1950); *Davis v. Newton*, 217 Ga. 75, 78 (121 SE2d 153) (1961).

[7] 2 George A. Pindar and Georgine S. Pindar, Georgia Real Estate Law and Procedure, § 19-15 (4th ed. 1993).

[8] See *Boyd Lumber Co. v. Mills*, 146 Ga. 794, 796 (92 SE 534) (1917) (grantor who delivers a deed containing no property description cannot give the grantee authority to fill in the description).

the adjoining property which Mrs. Simmons had conveyed in 1968. Thereafter, Grandson constructed a building which was partially on Mrs. Simmons' home place and partially on the adjoining property. Mrs. Simmons continued to occupy her home place until she was declared incompetent. Her son, James Curry, (Son) was named as guardian and, in his representative capacity, he brought an action for ejectment and writ of possession, seeking to oust Grandson from Mrs. Simmons' home place. Grandson counterclaimed, seeking to have the legal description in Mrs. Simmons' 1988 deed reformed so as to convey to Grandson the home place property. After a bench trial, judgment was entered in favor of Son and against Grandson. On appeal, the majority reverses, concluding "that the error in the deed describing a lot that the grantor had already conveyed was a mistake common to both parties." In my opinion, the trial court, sitting as the trier of fact, was authorized to find that the legal description in the 1988 deed was not a mutual mistake which can be reformed in equity. Accordingly, I believe that the majority erroneously substitutes its findings for those of the trial court and I must, therefore, respectfully dissent.

The burden was on Grandson to prove that the legal description in the 1988 deed was a mutual mistake as between himself and Mrs. Simmons. He could not meet this burden by a mere preponderance of the evidence, but only with "clear, unequivocal, and decisive" evidence. OCGA § 23-2-21 (c); *Carroll v. Craig*, 214 Ga. 257, 261 (5) (104 SE2d 215) (1958). In determining whether the judgment in this case is erroneous, it is immaterial that there might be "clear, unequivocal, and decisive" evidence which would authorize a finding in favor of Grandson. Since the judgment for Son was entered after a bench trial, it can be reversed only if the "clear, unequivocal, and decisive" evidence demanded a judgment in favor of Grandson. The trial court's "findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witness. [Cit.]" *Bell v. Cronic*, 248 Ga. 457, 459 (2) (283 SE2d 476) (1981). "Factual findings and credibility determinations by the trial court will be upheld on appeal if there appears in the record any evidence to support them. [Cit.]" *Dudley v. Snead*, 250 Ga. 804-805 (301 SE2d 480) (1983).

In reversing the judgment in this case, the majority places great emphasis upon the purported instructions given by Mrs. Simmons to "her attorney to prepare a deed conveying the home place lot to her [G]randson." However, the *only* evidence of these purported instructions is Grandson's own testimony. Mrs. Simmons was not a witness in the case and the attorney is dead. Although the other witness to the 1988 deed was alive and apparently could have been subpoenaed, she was not called to testify on Grandson's behalf. There is some

question whether Grandson's testimony as to Mrs. Simmons' instructions to her attorney constitutes probative evidence or non-probative hearsay. However, even assuming that his testimony is probative evidence, it certainly is not "clear, unequivocal, and decisive" evidence which *demands* a finding that Mrs. Simmons had so instructed her attorney. Grandson's failure to call the witness to the 1988 deed authorized the trial court to presume that Son's claims for ejectment and writ of possession were "well founded." OCGA § 24-4-22. Moreover,

> [w]hen a party relies on his own testimony in order to prevail, he has no just ground of complaint if, after scanning it carefully, without indulging any presumption in his favor, or supplying any gaps appearing therein, a court viewing it as a whole reaches the conclusion that it is insufficient to make out his case. [Cits.]

*Stepp v. Stepp*, 195 Ga. 595, 597 (25 SE2d 6) (1943).

The majority also indicates that, shortly after execution of the deed, Mrs. "Simmons told her granddaughter that she had *deeded* her home and land behind it to her [G]randson." (Emphasis supplied.) The actual testimony is that Mrs. Simmons stated to her granddaughter that she had "given" her home place to Grandson. Again, assuming without deciding that this testimony as to an out-of-court statement attributed to Mrs. Simmons is not merely non-probative hearsay, the issue for resolution is not whether Mrs. Simmons had "given" her home place to Grandson, but whether the 1988 deed mistakenly described the adjoining property, rather than Mrs. Simmons' home place, as the object of the conveyance. The testimony of Mrs. Simmons' granddaughter certainly would not constitute "clear, unequivocal, and decisive" evidence of such a mistake. It was the trial court's responsibility to determine the credibility of this testimony and to construe it in conjunction with all of the other evidence in the case.

Pretermitting any consideration of what the evidence would have *authorized* the trial court to find, what the trial court ultimately did find was that Mrs. Simmons "intended to convey the exact property described" in the 1988 deed. If she intended to convey that "exact" property, the 1988 deed certainly cannot be reformed so as to evidence an unintended conveyance of her home place. Notwithstanding the trial court's finding, the majority concludes there is no evidence of Mrs. Simmons' intent to convey the adjoining property, "since she had previously conveyed the property." However, the mere fact that Mrs. Simmons had conveyed in 1968 the property described in her 1988 deed to Grandson does not demand a finding that it was

not her intent to convey that "exact" property to him. She simply may have been mistaken as to her continued ownership of the property which she previously had conveyed in 1968 and which was described in the 1988 deed. If Mrs. Simmons was so mistaken, there can be no reformation, since she did not intend to convey her home place, but intended to convey property which was no longer hers to convey. Whether Mrs. Simmons was mistaken as to her ownership of the described tract is an entirely different issue from whether she was mistaken as to the legal description of her home place property. Here, there is some evidence that Mrs. Simmons was confused as to the extent of her real estate holdings. See *Terry v. Fickett*, 199 Ga. 30, 38 (8) (33 SE2d 163) (1945). Moreover, the post-deed conduct of Mrs. Simmons is consistent with her intent that the adjoining property, rather than her home place property, was the object of the 1988 deed. After her execution of the 1988 deed, Mrs. Simmons continued to live on her home place property. If she had intended to convey her home place but continue to live there, the 1988 deed presumably would have reserved a life estate for her. The deed did not contain such a reservation. If, on the other hand, she had intended to convey the adjoining property in the mistaken belief that she still owned it and also intended to allow Grandson to use her home place while she retained title thereto, she would have deeded him the adjoining property and would not have objected when he constructed a building partially on both parcels. The evidence authorized the trial court to find that this is what she did do. The continuing post-deed possession of the home place by Mrs. Simmons

> may not be inconsistent with the fact of a complete gift from [her] to [her Grand]son; but it was for the [trier of fact] to decide whether or not this possession of [Mrs. Simmons] was a possession for the [Grand]son.

*Hansell v. Bryan*, 19 Ga. 167, 170 (2) (1855).

Here, the trial court, as the trier of fact, was authorized to find that Grandson did not meet his burden of showing a mutual mistake in the legal description of the 1988 deed by "clear, unequivocal, and decisive" evidence and that Mrs. Simmons had deeded Grandson the adjoining parcel in the mistaken belief that she owned that property. The trial court is the "final arbiter of the weight of the evidence and the credibility of witnesses. The judge's findings of fact will not be disturbed on appeal as long as there is any evidence to support those findings." *Hughes v. Cobb County*, 264 Ga. 128, 130 (1) (441 SE2d 406) (1994). This Court is not authorized and, heretofore, has not been " 'inclined to substitute [its] judgment on the evidence for the judgment of the trial court unless the record discloses absolutely no

evidence in support of the finding by the trial court.'" *Wilkins v. Wilkins*, 234 Ga. 404, 405 (216 SE2d 302) (1975). In my opinion, the majority deviates from this long-standing principle by reversing the judgment in this case and I must, therefore, dissent.

I am authorized to state that Justice Thompson joins in this dissent.

DECIDED JULY 15, 1996 —
RECONSIDERATION DENIED SEPTEMBER 6, 1996.

*Bush, Crowley, Leverett & Leggett, J. Wayne Crowley,* for appellant.

*Lane & Jarriel, Walter J. Lane, Jr.,* for appellee.