**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

July 14, 2015

# In the Court of Appeals of Georgia

A15A0555. AAA RESTORATION COMPANY, INC. v. PEEK.

BRANCH, Judge.

AAA Restoration Company, Inc. ("AAA"), appeals from an order of the Henry County Superior Court denying AAA's motion to stay the lawsuit brought against it by Florence Dianne Peek and to compel arbitration of Peek's claims against AAA. AAA contends that the trial court erred in finding that a corporate misnomer as to the arbitral forum designated in the arbitration clause of the parties' agreement meant that the arbitral forum was unavailable. AAA further argues that even if the parties' designated arbitral forum is unavailable, the trial court misapplied our decision in *Miller v. GGNSC Atlanta*, 323 Ga. App. 114 (746 SE2d 680) (2013), to find that this unavailability rendered the arbitration clause void and unenforceable and that therefore the appointment of a substitute arbitrator pursuant to OCGA § 9-9-7 (b) was

not required. For reasons explained more fully below, we agree that the trial court erred in finding the arbitration clause unenforceable and in refusing to appoint a substitute arbitrator. Accordingly, we reverse the trial court's order and remand the case for entry of an order requiring the parties to arbitrate Peek's claims against AAA and appointing a substitute arbitrator.

Because "[t]he question of whether a valid and enforceable arbitration agreement exists, . . . represents a question of law," we review de novo a trial court's order granting or denying a motion to compel arbitration. *Yates v. CACV of Colorado*, 303 Ga. App. 425 (693 SE2d 629) (2010) (citation and footnote omitted).

The facts relevant to this appeal are undisputed. On July 16, 2013, a fire occurred at Peek's residence in Newnan, resulting in the destruction of a significant portion of the home. Approximately three weeks later, Peek signed a written agreement ("the Agreement") with AAA for the demolition of her fire-damaged residence and for the construction of a new home on the same lot. The Agreement contained an arbitration clause, initialed by both Peek and a representative of AAA, which provides:

> All disputes arising from or related to this Agreement shall be resolved
> by binding arbitration in accordance with the Construction Arbitration

2

Association (of Atlanta) according to their Commercial rules. The locale of any such arbitration shall be Atlanta, Fulton County, Georgia. The dispute shall be heard and decided by a single arbitrator selected pursuant to the applicable arbitration rules.

A dispute eventually arose between the parties and in March 2014, Peek filed suit against AAA asserting claims for rescission, fraud, negligent misrepresentation, violations of the Deceptive Trade Practices Towards the Elderly Act (OCGA § 10-1-850, et seq.), violations of the Fair Business Practices Act (OCGA § 10-1-393, et seq.), negligence, intentional infliction of emotional distress, and conversion. Peek also sought declaratory relief, attorney fees, and punitive damages. In its answer, AAA asserted that the trial court lacked jurisdiction, as the Agreement required the parties to arbitrate their dispute. AAA also filed a motion to dismiss for lack of jurisdiction together with a motion to stay the action and compel arbitration. In her response, Peek asserted that the arbitration clause was void and unenforceable because the designated arbitral forum, Construction Arbitration Association (of Atlanta), did not exist. AAA then filed a reply in which it claimed that it intended the Agreement to designate "Construction Arbitration Associates, Ltd.," as the arbitrator. In support of this assertion, AAA submitted the affidavit of its Assistant Vice President, Michael McCune. McCune averred that "AAA has always understood the

3

[Agreement's arbitration clause] to mandate the arbitration of any disputes between the parties to be before Construction Arbitration Associates, Ltd."; and that "it was the intent of AAA to resolve any disputes between AAA and Peek through Construction Arbitration Associates, Ltd., as that was the pattern and business practice of AAA."

Following a hearing on the motion to compel arbitration, the trial court denied the same. At the request of AAA, and over the objection of Peek, the trial court certified its order for immediate review. This Court then granted AAA's application for an interlocutory appeal.

1. AAA first argues that, as evidenced by the affidavit of AAA's Vice President, the arbitration clause simply misidentifies Construction Arbitration Associates, Ltd., as Construction Arbitration Association (of Atlanta). AAA further contends that this Court is free to correct the misnomer in the Agreement's arbitration clause and require the parties to arbitrate before Construction Arbitration Associates, Ltd. We disagree.

In support of its argument, AAA relies on the rule that "a mere misnomer of a corporation in a written instrument, or in a law, or in a judicial proceeding is not material or vital in its consequences, if the identity of the corporation intended is clear

4

or can be ascertained by proof." *Pinson v. Hartsfield Intl. Commerce Center*, 191 Ga. App. 459, 461 (382 SE2d 136) (1989) (citation, punctuation, and emphasis omitted). Applying this rule, we have held that a corporate misnomer in a deed to secure debt or a deed transferring title to real property will not invalidate the deed or otherwise taint the chain of title. See *Darling Intl. v. Carter*, 294 Ga. 455, 461 (1) (b), n. 3 (754 SE2d 347) (2014) (chain of title showing the grantor's name as including the word "Southeast" rather than "Southeastern" did not mean that transfer of land from Southeastern Maintenance and Construction, Inc., was invalid); *Deutsche Bank Nat. Trust Co. v. JP Morgan Chase Bank, N.A.*, 307 Ga. App. 307, 310 (1) (a) (704 SE2d 823) (2010) ("[i]t cannot be said that the mere placement of an additional space in the corporate name (i.e., 'Indy Mac' versus 'IndyMac') made the identity of the corporation unclear" and thus "the misnomer did not render the Warranty Deed irregular on its face"). Similarly, where a corporation is a party to a contract, a corporate misnomer contained in the agreement will neither invalidate the contract, deprive the misnamed party of the ability to sue on the contract, nor protect the

misnamed party from being sued for breach of the agreement.[1] See *Johnson v. Unified Residential Dev. Co.*, 285 Ga. App. 852, 858-859 (5) (648 SE2d 163) (2007) (use of the name "Unified Residential, Inc.," in the contracts at issue, rather than "Unified Residential Dev. Co., Inc.," constitutes "a mere misnomer that does not render [the agreements] unenforceable," given that the "identity of the corporation was properly proved"); *Atlanta Indoor Advertising Concepts v. World Class Fitness*, 213 Ga. App. 295-296 (1) (444 SE2d 385) (1994) (corporate misnomer in contract did not bar corporation from suing on that contract); *Pinson*, 191 Ga. App. at 462 (fact that lease contained a misnomer as to corporate tenant did not relieve corporation of liability thereunder); *Hawkins v. Turner*, 166 Ga. App. 50, 51-52 (1) (303 SE2d 164) (1983) (fact that contract misidentified the corporation on whose behalf the agent executed the agreement did not render the agent personally liable on the contract as a matter of law).

---

[1] In support of its argument that this Court may correct AAA's mistake in drafting the arbitration clause, AAA also relies on cases holding that a corporate misnomer in a complaint will not invalidate service of process, where service was in fact made on the real party-defendant. See *Mathis v. BellSouth Telecommunications*, 301 Ga. App. 881, 883 (690 SE2d 210) (2010); *Miller v. U. S. Shelter Corp. of Delaware*, 179 Ga. App. 469, 471-472 (2) (347 SE2d 251) (1986). We find these cases to be completely inapplicable to cases involving an alleged corporate misnomer in a contract, as their holdings rely on a party's statutory right to amend his pleadings. See OCGA § 9-10-132; OCGA § 9-11-15 (a).

Notably, in each of these cases, the corporate entity that had been misidentified was a party to the transaction which gave rise to the litigation, as well as being a party to the lawsuit itself. Thus, in each case the evidence was clear as to which corporate entity the parties to the transaction had intended to name in the contract or deed. And the evidence also showed that the misnomer had resulted from a mutual mistake of the parties to the underlying transaction – i.e., that despite the intent of both parties, the contract or deed had misnamed a corporate entity. Such evidence of the parties' intent is not present in this case.

The corporate entity that was allegedly misidentified (Construction Arbitration Associates, Ltd.) was not a party to the underlying Agreement and is not a party to this dispute. Additionally, there is no evidence that Peek knew of Construction Arbitration Associates, Ltd., or intended to designate that entity, rather than Construction Arbitration Association (of Atlanta), as the parties' arbitral forum. Thus, we cannot conclude that all parties to the transaction intended the arbitration clause to name Construction Arbitration Associates, Ltd., as the arbitral forum.

Put another way, the relief sought by AAA is not the correction of a corporate misnomer known to all parties to the Agreement. Instead, AAA is seeking reformation of the agreement to have the name "Construction Arbitration Associates,

7

Ltd." substituted for the name "Construction Arbitration Association (of Atlanta)." To be entitled to reformation of a contract based upon a mistake, however, the party seeking that reformation must show by "'clear, unequivocal and decisive'" evidence that the mistake was mutual, rather than unilateral. See *MAPEI Corp. v. Prosser*, 328 Ga. App. 81, 85 (3) (761 SE2d 500) (2014), quoting *Prince v. Friedman*, 202 Ga. 136, 138 (1) (42 SE2d 434) (1947). See also *Curry v. Curry*, 267 Ga. 66, 67 (1) (473 SE2d 760) (1996) (a party may seek reformation of a written contract "'where by mistake of the scrivener and by oversight of the parties, the writing does not embody or fully express the real contract of the parties. The cause of the defect is immaterial so long as the mistake is common to both parties to the transaction.'") (footnotes omitted); OCGA § 23-2-31 ("[e]quity will not reform a written contract unless the mistake is shown to be the mistake of both parties"). Here, the evidence shows only that AAA, as the drafter of the Agreement, made a unilateral mistake when it named "Construction Arbitration Association (of Atlanta)" as the arbitral forum. Accordingly, we cannot reform the contract to reflect that the parties intended to designate Construction Arbitration Associates, Ltd., as the arbitral forum. As explained in Division 2, however, our inability to reform the arbitration clause does not render that clause invalid.

8

2. Given that the arbitral forum designated in the Agreement (Construction Arbitration Association (of Atlanta)) does not exist, the question is whether the failure of this forum means that the arbitration clause is impossible to perform and therefore unenforceable. AAA argues that the arbitration clause remains enforceable because the contract is governed by the Georgia Arbitration Code, OCGA § 9-9-1, et seq., and section 7 of that statute permits the trial court to appoint a substitute arbitrator. We agree.

The Georgia Arbitration Code ("GAC") provides that the trial court "shall appoint one or more arbitrators" where the arbitration agreement "does not provide for a method of appointment" or where the method for appointing arbitrators set forth in the parties' agreement either "fails" or "is not followed for any reason." OCGA § 9-9-7 (b) (1) - (3). In *Miller*, 323 Ga. App. 114, we adopted the "integral term vs. ancillary logistical concern" test "for determining whether an arbitration agreement becomes unenforceable where the arbitral forum designated therein is unavailable for any reason" or whether the federal equivalent of OCGA § 9-9-7 "allows a court to name a substitute arbitrator." Id. at 119-120 (2) (footnotes omitted). Although in

9

*Miller* we were dealing with section 5 of the Federal Arbitration Act ("FAA"),[2] we find this same test should apply to cases governed by the GAC. Section 5 of the FAA is substantially similar to OCGA § 9-9-7, and as our Supreme Court has explained, "[b]ecause our state arbitration code closely tracks federal arbitration law, we look to federal cases for guidance in construing our own statutes." *Brookfield Country Club v. St. James-Brookfield, LLC*, 287 Ga. 408, 411-412 (1) (696 SE2d 663) (2010) (citation and punctuation omitted). Moreover, under Georgia law, arbitration is a

---

[2] Section 5 of the FAA provides:
> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 USC §5.

matter of contract, and therefore an arbitration clause is subject to the ordinary rules of contract interpretation. *South Point Retail Partners v. North American Properties Atlanta, Ltd.*, 304 Ga. App. 419, 422 (1) (696 SE2d 136) (2010). The cardinal rule of contract construction is to ascertain the intent of the parties, as reflected in the language of the contract. *Miller*, 323 Ga. App. at 119-120 (2). And as we explained in *Miller*, the "integral term vs. ancillary logistical concern" test "is consistent with Georgia contract law, in that it focuses on and requires a court to give effect to the intent of the contracting parties, as evidenced by the contract's language." Id. Accordingly, we find that the integral term vs. ancillary logistical concern test applies to arbitration agreements governed by the GAC.

Under this test, "where the language of the agreement reflects that the choice of arbitral forum 'is an integral part of the agreement to arbitrate,' then the agreement will be considered void if the forum is unavailable." *Miller*, 323 Ga. App. at 119 (2), quoting *Brown v. ITT Consumer Financial Corp.*, 211 F3d 1217, 1222 (II) (A) (3) (11th Cir.2000). "If, on the other hand, the agreement shows that the selection of a particular forum was merely an 'ancillary logistical concern,' [OCGA § 9-9-7] will apply and a substitute arbitrator may be named." *Miller*, 323 Ga. App. at 119 (2). Thus, the question we must decide in this case is whether the arbitration clause

11

reflects that the selection of Construction Arbitration Association (of Atlanta) as the arbitral forum was integral to the parties' agreement to arbitrate. "In other words, does the language of the [a]rbitration [clause] indicate that the parties intended to arbitrate their claims only if [Construction Arbitration Association (of Atlanta)] was available to administer that arbitration?" Id. at 120 (2).

Both Peek and the trial court rely on our application of the integral term vs. ancillary logistical concern test in *Miller* to conclude that the designation of the arbitral forum was an integral part of the arbitration clause at issue in this case. Specifically, citing *Miller*, the trial court found that because the arbitration clause at issue provides that the parties "shall" arbitrate their disputes "in accordance with the Construction Arbitration Association (of Atlanta) according to their Commercial rules," the parties "contracted to arbitrate only before Construction Arbitration Association (of Atlanta) — an entity that does not exist." Thus, the trial court concluded that the appointment of a substitute arbitrator "'would constitute a wholesale revision of the arbitration clause.'" (quoting *Miller*, 323 Ga. App. at 124

(2)).[3] This reasoning gives far too broad a reading to *Miller* and fails to acknowledge the unique circumstances of that case — circumstances which do not exist here.

In *Miller*, we found that the selection of the arbitral forum (the National Arbitration Forum or "NAF"), was an integral term of the arbitration agreement for several reasons. First, the arbitration agreement provided "that any disputes between the parties '*shall* be resolved *exclusively* through binding arbitration' conducted 'in accordance with the National Arbitration Forum Code of Procedure, *which is hereby incorporated into this Agreement*.'" 323 Ga. App. at 120 (2) (emphasis in original). The NAF Code of Procedure, in turn, provided that "only the NAF" could administer its Code, id., and that if the parties were unable to arbitrate before the NAF or pursuant to the NAF Code (which could be administered only by the NAF), "the parties [were] free to seek legal remedies — i.e., to file a traditional lawsuit." Id. at 122 (2). We concluded that "[t]he Arbitration Agreement's use of the mandatory 'shall' and the word 'exclusively,' *together with its express incorporation*" of rules releasing the parties from their obligation to arbitrate if the NAF was not available

_____

[3] This quote is taken from that part of our opinion in *Miller* that addressed whether the clause in the arbitration agreement specifying the choice of arbitral forum could be severed from the remainder of the arbitration agreement.

demonstrated "that the parties did not have a general agreement to arbitrate; rather, they contracted to arbitrate only before the NAF." Id. at 120-121 (2) (emphasis supplied).

The circumstances in this case are markedly different from those in *Miller*. As an initial matter, the forum designated by the parties in *Miller* did, in fact, exist; it was unavailable because the NAF had "entered into a consent judgment under which [it] agreed that it would not administer, process, or in any manner participate in any consumer arbitration" after a certain date. Id. at 116 (punctuation and footnote omitted). In this case, however, the designated forum did not exist. This fact, together with the fact that neither party noticed the mistake when initialing the arbitration clause, serves as evidence that the choice of arbitrator was merely an ancillary logistical concern of the parties. In other words, these facts tend to show that the forum named in the arbitration clause was not integral to the agreement to arbitrate. See *Inetianbor v. CashCall, Inc.*, 768 F3d 1346, 1350 (III) (A) (11th Cir. 2014) ("[t]o decide whether the forum selection clause is integral, we must consider how important the term was to one or both of the parties at the time they entered into the agreement") (citation omitted).

Moreover, although the arbitration clause at issue does employ the mandatory term "shall," unlike *Miller*, the parties here did not use the word "exclusively." Thus, the parties gave no indication that they intended Construction Arbitration Association (of Atlanta) to be the only forum in which they would arbitrate their disputes. This lack of "exclusive intent," taken together with the fact that Georgia law provides for the appointment of a substitute arbitrator where a designated forum is unavailable, further supports the conclusion that the selection of an arbitral forum was not integral to the parties' agreement to arbitrate. See *Brown*, 211 F3d at 1222 (3) (selection of arbitral forum not an integral part of an arbitration clause which provided that any dispute between the parties "shall be resolved by binding arbitration under the Code of Procedure" of a forum that had become defunct by the time the dispute arose; thus, Section 5 of the FAA empowered the trial court to appoint a substitute arbitrator).

Finally, and most importantly, the arbitration clause at issue did not incorporate, by reference or otherwise, any language indicating that if the designated arbitral forum was unavailable, the parties were not obligated to arbitrate their disputes but were instead free to seek traditional legal remedies. Given the circumstances of this case, including the non-exclusive language of the arbitration clause and the fact that it named a non-existent forum, we find that the designation

15

of the arbitral forum was merely an ancillary concern of the parties; it was not an integral part of the parties' agreement to arbitrate any dispute that arose out of their Agreement. See *Inetianbor*, 768 F3d at 1350 (III) (A) (the designation of an arbitral forum is an integral part of an agreement to arbitrate only where it appears that the selection of this forum was "'as important a consideration as the agreement to arbitrate itself'"), quoting *In re Salomon Inc. Shareholders Derivative Litigation*, 68 F3d 554, 561 (III) (2d Cir. 1995). Accordingly, the trial court erred in finding that the arbitration clause at issue in this case was unenforceable.

For the reasons explained herein, we find that the parties have a binding agreement to arbitrate their disputes. Because the designated arbitral forum is unavailable, the trial court shall on remand exercise its authority under OCGA § 9-9-7 (b) to appoint a substitute arbitrator. In so doing, the trial court shall honor those parts of the arbitration clause which require that the arbitration be conducted in "Atlanta, Fulton County, Georgia," by a "single arbitrator."

*Judgment reversed and case remanded with direction. Andrews, P. J., and Miller, J., concur.*