**FIRST DIVISION**
**DOYLE, C. J.,**
**PHIPPS, P. J., and BOGGS, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 12, 2015**

# In the Court of Appeals of Georgia

A15A0819. HARRIS v. WEST CENTRAL GEORGIA BANK.        BO-039

BOGGS, Judge.

Following a bench trial, Andy Harris appeals from a trial court order dismissing his claim against West Central Georgia Bank ("WCGB") to set aside cancellation of a security deed. Harris asserts that the trial court erred in concluding that the deed was invalid. We discern no error and affirm.

> On an appeal from an entry of judgment following a bench trial, we apply a de novo standard of review to any questions of law decided by the trial court, but will defer to any factual findings made by that court if there is any evidence to sustain them. [Nevertheless], if the trial court makes a finding of fact which is unsupported by the record, that finding cannot be upheld and any judgment based upon such a finding must be reversed.

(Citation, punctuation and footnote omitted.) *Central Mortgage Co. v. Humphrey*, 328 Ga. App. 474, 475 (759 SE2d 896) (2014).

The trial court found and the record shows, that Harris, Phillip Adcock, and a third party, formed APW Group, LLC ("APW") for the purpose of investing in real estate. In March 2007, APW purchased 45 lots in a subdivision using a $1,350,000 loan from AgSouth Farm Credit, ACA ("AgSouth"). In order to secure the loan AgSouth required additional collateral such that the loan-to-value ratio would be 75 percent. Harris and his wife executed security deeds for two tracts of land to AgSouth to "guarantee the payment of [the] . . . Bond in the original principal amount of . . . $1,350,000." Adcock executed a "deed to secure debt" on land he owned ("the property") in favor of Harris to secure an alleged promissory note dated February 20, 2007 in the amount of $150,000. It is undisputed that no money was exchanged between Harris and Adcock. And the trial court found that there was no "promissory note in evidence underlying the security deed."

In March 2008, Adcock borrowed money from United Bank against the property, and the security deed was recorded in April 2008. In October 2008, a cancellation of the security deed from Adcock to Harris was recorded. Harris asserts that this cancellation was forged. In November 2010, Adcock borrowed money

2

against the property from WCGB and granted it a security deed as collateral for the loan. In December 2010, the United Bank loan was paid off with the proceeds from the WCGB loan and United Bank's security deed was cancelled.

When Adcock subsequently defaulted on the WCGB loan, WCGB sought to initiate foreclosure proceedings. Harris then filed suit to enjoin WCGB's foreclosure and to have the cancellation of his security deed set aside. The parties entered into a consent order to allow the foreclosure to proceed, and the trial court held a bench trial on Harris' complaint and WCGB's counterclaim to quiet title.[1]

Following the trial, the court ruled that it was unnecessary to determine if the cancellation of Harris' security deed was a forgery, because the deed was "invalid for want of a debt actually secured by the instrument." The court then dismissed Harris' complaint and granted WCGB's counterclaim to quiet title.

In three enumerations, Harris asserts that the trial court erred. He argues that WCGB cannot bring a claim to quiet title because a failure of consideration is a defense to an action in contract, and WCGB lacks "that connection or relationship"

---

[1]This appeal was originally filed in the Georgia Supreme Court, but that court transferred the appeal here on grounds "that the allegations raised . . . do not meet the definition of cases involving title to land," and "although appellee sought and received 'equitable' relief, the availability of that relief was wholly dependent on resolution of the underlying legal issues."

necessary to have the ability to attack an agreement between he and Adcock. Harris argues further that he was given a security interest in Adcock's property to secure Adcock's obligations under the APW operating agreement, and that a security deed that erroneously identifies the consideration "is not invalidated by the mistaken reference."

Harris testified in his deposition that despite its express terms, the security deed secured Adcock's "obligations under the operating agreement" or to "meet his one-third obligation in APW Group." He explained that at one point during the negotiations with AgSouth, AgSouth informed him that they "could each put up property worth a hundred and fifty thousand dollars apiece," but that Adcock and the third member "couldn't do that . . . I'm the only one that had property that was paid for. So I put my property up to - - to get this deal done." Harris explained further that he was required to put down collateral equaling one-third of the purchase price, or $450,000, in order to receive the full loan amount of $1,350,000, that Adcock and the third member did not have enough cash to contribute to that collateral, and that they both therefore gave him "a lien toward a property they owned."

Adcock asserted, however, that he did not recall signing the deed to secure debt although the signature "appear[ed]" to be his, and that he first became aware of the

4

deed in July 2011. He agreed that as a one-third member of APW, he was obligated to pay one-third of all the expenses, including the bond, but denied that he was obligated to pay one-third, or $150,000, of the down payment needed to purchase the 45 lots. The commercial loan officer deposed that only Harris had unencumbered assets that could be used as collateral and that AgSouth did not take a security interest in any property that the other two members owned "because they didn't have anything that would give [AgSouth] the priority position that [it] wanted."

The March 2007 operating agreement between Harris, Adcock, and a third party, provided in relevant part that each of the three members would contribute an initial capital of $12,500, that no member shall be obligated to contribute any additional capital to the company, that if any member advances any money to the company it shall be considered a loan, and that any net profits or losses from the operation of the company shall be borne by the members in proportion to their interest in the company. There was no provision in the agreement creating an obligation for each member to pay one-third of the cost of any property or asset purchased by APW.

"[A] deed purporting to secure a debt which never existed or which has been discharged is not a valid instrument and may be regarded as no more than a cloud on

5

the title." 2 Daniel F. Hinkel, Pindar's Ga. Real Estate Law & Procedure § 21:28 (6th ed. 2004). And while "the secured indebtedness is almost invariably a sum of money advanced by the grantee to the grantor," there are exceptions, as in the case of a deed to secure the performance of a lease or contract. Id. at § 21-29. Here however, the security interest was granted by a deed *to secure debt* which listed $150,000 as the debt and stated that the debt was evidenced by a promissory note. But the evidence showed, and Harris admitted, that no promissory note existed, and there was no evidence that Harris advanced funds to Adcock. See, e. g., *Beasley v. Paul*, 223 Ga. App. 706, 711 (478 SE2d 899) (1996) (deed void where underlying promissory note unenforceable); compare *Lanier v. Anthony*, 261 Ga. App. 848, 851-852 (1) (583 SE2d 893) (2003) (deed valid where evidence showed existence of debt, promissory note, and that funds were advanced).

Had the parties intended the performance of obligations under the APW operating agreement to constitute consideration for the grant of a security interest in the property, they could have so provided. It is true that "[e]quity may intervene and reform a conveyance when the instrument fails to express accurately the intention of the parties." *Curry v. Curry*, 267 Ga. 66, 67 (1) (473 SE2d 760) (1996), citing OCGA §§ 23-2-25, 23-2-30. "For a mistake to have been a defense in this regard it must have

6

been common to all the parties to the transaction; or it must have been induced by the fraud or concealment of the other party." (Citation omitted.) *Gauker v. Eubanks*, 230 Ga. 893, 896 (1) (199 SE2d 771) (1973). The parties agree that the promissory note referenced in the deed did not exist and Harris admits he did not loan Adcock money, but the parties disagree that the deed was instead made to secure Adcock's performance under the APW operating agreement. Because this is not a case of mutual mistake common to both parties, there is no right to reformation of the deed. Compare *Curry*, supra (mistake in deed describing wrong lot was common to both parties). Under these circumstances, the trial court did not err in concluding that the deed to secure debt was invalid. The court also did not err in granting WCGB's counterclaim to quiet title. Although Harris asserts that WCGB could not bring an action to quiet title because it could not attack an agreement between he and Adcock, WCGB's counterclaim asserted that the invalid deed casts a cloud over its title to the property pursuant to a security deed granted by Adcock. See OCGA § 23-3-40 (proceeding to quiet title is sustained where any instrument casts a cloud over complainant's title).

*Judgment affirmed. Doyle, C. J. and Phipps, P. J., concur*.