**SECOND DIVISION**
**BARNES, P. J.,**
**DOYLE, P. J. and RAY, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**May 30, 2013**

# In the Court of Appeals of Georgia

A13A0570, A13A0571. FEDINA v. LARICHEV (two cases).      DO-039
     DO-040

DOYLE, Presiding Judge.

Following their divorce, Yuliya Fedina sued Alexi Larichev, seeking title to a condominium, cancellation of a security deed and promissory note, an accounting for Larichev's business, and repayment of money she alleges Larichev owes to her. Larichev filed counterclaims for breach of contract and conversion. Following a bench trial, the trial court entered judgment in favor of Larichev as to Fedina's claims and in favor of Larichev as to his counterclaims, but awarded him $0 in damages. Fedina appeals in two related cases, arguing in Case No. A13A0570 that the trial court erred by failing to cancel the security deed and promissory note and by finding in favor of Larichev as to her claim that he owed her money. In Case No. A13A0571, Fedina argues that the trial court erred by awarding Larichev attorney fees under

OCGA § 9-15-14 (b) and by denying her post-judgment motions to unseal records from the Georgia Department of Human Services ("GDHS") regarding Larichev and for an accounting of Larichev's safety deposit box. We have consolidated the cases for review, and for the reasons that follow, we affirm in part, vacate the award of attorney fees, and remand.

"When an appeal is taken from a judgment entered following a bench trial, we owe no deference to the way in which the court below resolved questions of law, but we accept its factual findings unless clearly erroneous, and we view the evidence in the light most favorable to the judgment."[1]

So viewed, the evidence in this case shows that Fedina and Larichev were married on April 9, 2008. The couple separated several months later, and they decided to purchase a condominium for Larichev. On August 28, 2008, Fedina closed on the property. Because Larichev had poor credit, the property was titled in Fedina's name. Although both parties provided funds for the purchase, in an effort to give Larichev "some financial interest in [the] property," Fedina executed a promissory note and security deed, both of which listed Fedina as the borrower and Larichev as the

---

[1] (Citation omitted.) *French v. Dilleshaw*, 313 Ga. App. 834, 835 (723 SE2d 64) (2012).

lender.[2] Larichev subsequently repaid Fedina in full for the amounts she paid towards the condominium.

The couple divorced shortly thereafter on January 14, 2009, after reaching a settlement. On the day of the divorce, Fedina provided Larichev with a quitclaim deed for the condominium.[3]

On May 11, 2010, Fedina filed the instant lawsuit against Larichev, seeking title to the condominium; cancellation of the security deed and promissory note, which Fedina characterized as "a sham"; an accounting for Larichev's business, A&Y Trade, LLC; and repayment of money she alleged Larichev owed to her. Larichev filed an answer and counterclaim, asserting claims for breach of contract with respect to the promissory note and conversion based on Fedina's alleged failure to reimburse him for money he lent to her.

---

[2] Fedina later testified that she "really was not aware that [she] signed the promissory note," explaining that she simply signed the documents that the attorney gave her at closing.

[3] The quitclaim deed is dated August 28, 2008, and it was recorded on July 26, 2010. Fedina testified, however, that she gave Larichev the quitclaim deed on January 14, 2009, the date the divorced was finalized. Fedina has never lived in the condominium, in which Larichev and his daughter reside.

After the quitclaim deed was recorded, Fedina filed a lis pendens on the condominium. Thereafter, Fedina filed an adverse claim bond pursuant to OCGA § 7-1-353 (b) (3), seeking access to a safety deposit box owned by Larichev. Following an emergency hearing, the trial court entered an order dissolving the bond and finding that Fedina was not entitled to restrict Larichev's access to his safe deposit box or to have the contents delivered to the trial court (as requested by Fedina), but ordered that Larichev and his attorney conduct an inventory of the contents of the safety deposit box.[4]

On June 3, 2011, Fedina filed a request for production on GDHS seeking Larichev's federal income tax returns for 2008, 2009, and 2010 and copies of any financial statements filed by Larichev "in connection with any application for welfare benefits, including but not limited to Temporary Family Assistance, Food Stamps, [and] Medicaid." GDHS filed a motion to quash the request, arguing that the requested documents are statutorily restricted by OCGA § 49-4-1 et seq. and by federal guidelines limiting the disclosure of public assistance records. The trial court,

---

[4] Fedina also filed two lawsuits in Cobb County Superior Court against the homeowners' association for the condominium alleging fraud and breach of contract; Fedina ultimately dismissed both lawsuits, and the superior court required Fedina to pay the homeowners' association $12,000 in attorney fees for abusive litigation under OCGA § 9-15-14 (b) based on the fact that she did not own the condominium.

4

without holding a hearing, entered an order on July 12, 2011, sealing the GDHS records relating to Larichev.

The case proceeded to a bench trial on August 22, 2011.[5] At the conclusion, the trial court entered an order finding in favor of Larichev as to Fedina's claims and finding in favor of Larichev as to his counterclaim, but awarding damages in the amount of $0.

On October 7, 2011, Larichev filed a motion for attorney fees under OCGA § 9-15-14 (b), which motion the trial court granted, ordering Fedina to pay him $12,000. On December 6, 2011, Fedina filed a motion to unseal the GDHS records regarding Larichev and a motion to require Larichev to file the results of the inventory of his safety deposit box. The trial court denied both motions. These appeals followed.

*Case No. A13A0570*

---

[5] Fedina did not object to the trial court's order sealing Larichev's records, nor did she seek access to the records before or during trial.

1. Fedina argues that the trial court erred by failing to grant her request to cancel the promissory note that she executed, which she characterizes as "a sham."[6] We disagree.

In the final order, the trial court concluded that Fedina was not entitled to the equitable relief of cancelling the promissory note because she "has [u]nclean [h]ands with respect to this transaction."[7]

> "'Unclean hands' is a shorthand reference to OCGA § 23-1-10, which states, 'He who would have equity must do equity and must give effect to all equitable rights of the other party respecting the subject matter of the action.' . . . OCGA § 23-1-10 embodies both the 'unclean hands' doctrine and the concept that 'one will not be permitted to take advantage of his own wrong.' However, relief is precluded only if the inequity so infects the cause of action that to entertain it would be violative of conscience."[8]

---

[6] Fedina does not argue on appeal that the security deed should have been cancelled as well.

[7] We note that while Larichev sought to recover damages for breach of the promissory note in his counterclaim, in the subsequent consolidated pretrial order, Larichev sought only damages for Fedina's alleged conversion of proceeds from the sale of a vehicle and attorney fees. Thus, Larichev apparently abandoned his attempt to recover under the promissory note at trial.

[8] (Citations and punctuation omitted.) *Goodson v. Ford*, 290 Ga. 662, 666 (5) (725 SE2d 229) (2012).

The inequity "must relate directly to the transaction concerning which complaint is made. The rule refers to equitable rights respecting the subject-matter of the action. It does not embrace outside matters."[9]

Here, Fedina specifically characterizes the promissory note as a sham, testifying that at the time it was executed the parties actually intended that Larichev repay her, rather than agreeing that she owed Larichev. This evidence supports the trial court's conclusion that Fedina had unclean hands, and her wrongdoing directly relates to her claim against which the doctrine is asserted.[10] Moreover, Fedina's self-serving testimony that the promissory note was "a sham" is an insufficient basis to

---

[9] (Punctuation omitted.) *Hampton Island, LLC v. HAOP, LLC*, 306 Ga. App. 542, 546 (3) (702 SE2d 770) (2010).

[10] See *Williams v. Williams*, 255 Ga. 264, 265 (336 SE2d 244) (1985).

cancel a promissory note.[11] For these reasons, the trial court did not err by denying Fedina's request to cancel the promissory note.

2. Fedina also argues that the trial court erred by denying her claim for repayment of money that she loaned to Larichev. We disagree.

Fedina claims that before the parties married, she loaned Larichev $25,000 to help him set up his business, and Larichev failed to repay her. Larichev, on the other hand, testified that he borrowed less than $25,000, and he repaid Fedina in full. The trial court rejected Fedina's claim on the basis that the claim was barred by the doctrine of res judicata because it was made prior to their divorce, and their settlement agreement did not mention the loan.

> The doctrine of res judicata prevents the re-litigation of all claims which have already been adjudicated, or which could have been adjudicated, between identical parties or their privies in identical causes of action. But as a matter of public policy, the doctrine of res judicata is

---

[11] See *Lovell v. Ga. Trust Bank*, 318 Ga. App. 860, 863 (2) (734 SE2d 847) (2012) ("A promissory note is an unconditional contract whereby the maker engages that he will pay the instrument according to its tenor. . . . The note being an unconditional promise, the contract is complete as written. Parol evidence may not be used to impose conditions which are not apparent from the face of the note. An oral agreement between the parties, made contemporaneously with the execution of the note or prior thereto relating to a condition not expressed in the note is incompetent to change the contract as represented on the face of the note.") (punctuation omitted).

less strictly applied in the context of divorce. Thus, the true rule of res judicata in divorce cases seems to be that a final decree has the effect of binding the parties and their successors as to all matters which were actually put in issue and decided, or which by necessary implication were decided between the parties. Moreover, in applying res judicata in cases where a settlement agreement was incorporated into the final judgment and decree of divorce, we apply the rules of contract construction to determine whether the agreement manifested an intent to settle all issues between the parties.[12]

Here, the parties' divorce settlement agreement provided that they "want to settle between themselves all questions of alimony, division of property, *debts*[,] and all other rights and obligations arising out of their marital relationship."[13] The parties also acknowledged therein "that they have already made a division of their marital property, including . . . bank accounts . . . and other personal property." Thus, the trial court properly concluded that Fedina's claim for repayment of money she loaned to Larichev was barred by res judicata.[14]

---

[12] (Citations and punctuation omitted.) *Ga. Neurology & Rehabilitation, P.C. v. Hiller*, 310 Ga. App. 202, 207 (2) (b) (712 SE2d 611) (2011).

[13] (Emphasis supplied).

[14] See *Prince v. Prince*, 147 Ga. App. 686, 689 (2) (250 SE2d 21) (1978) (res judicata barred ex-husband's claim that ex-wife converted funds because their divorce settlement agreement stated that they intended "to settle all matters pertaining to

9

3. Fedina contends that the trial court erred by denying her post-judgment motion to unseal the GDHS documents regarding Larichev, specifically arguing that the trial court improperly sealed the records without first holding a hearing.

Notwithstanding the trial court's failure to hold a hearing before placing the documents under seal as required by *In re: Atlanta Journal-Constitution*,[15] Fedina did not seek access to the records before or during the trial, nor did she object to the order sealing the documents. Thus, she waived this argument.[16] And her contention that she

---

alimony and division of property").

[15] 271 Ga. 436, 438 (519 SE2d 909) (1999) ("[B]efore a trial court may enter an order sealing a record, Uniform Superior Court Rule 21.1 specifically requires it to hold a hearing on the issue.").

[16] See, e.g., *Raszeja v. State*, 298 Ga. App. 713, 714-715 (2) (680 SE2d 690) (2009) (appellant waived argument regarding admission of copies of photographs by failing to move to compel production of the originals or to object to admission of the copies); *Mallard v. Forest Heights Water Works, Inc.*, 260 Ga. App. 750, 751 (2) (580 SE2d 602) (2003) (holding that appellant waived argument that the trial court erred by considering appellee's summary judgment motion without first ruling on appellant's motion to compel discovery responses because appellant never moved to continue the summary judgment ruling or otherwise object at the trial level).

intends to use the sealed documents as new evidence in her appeal is unavailing.[17] Accordingly, we find no abuse of discretion.

4. Next, Fedina argues that the trial court erred by denying her post-trial motion to require Larichev to file the inventory of his safety deposit box. Again, Fedina did not request that Larichev do so before trial, nor did she raise the issue at trial. Thus, for the same reasons set forth in Division 3, this argument fails.

5. Finally, Fedina argues that the trial court erred by awarding Larichev $12,000 in attorney fees. The trial court awarded the fees under OCGA § 9-15-14 (b), concluding that (1) Fedina's actions lacked substantial justification, and (2) "[t]he improper conduct of [Fedina], both in the prosecution of her claims . . . and her actions regarding title of the condominium and unauthorized authority in demanding the denial of access to [Larichev's] safety deposit box, unnecessarily expanded the proceedings."[18]

---

[17] See, e.g., *Seamon v. Seamon*, 279 Ga. App. 151, n. 1 (630 SE2d 659) (2006) ("'it is well established appellate procedure that this Court is unable to consider matters outside the record and transcript'").

Based on this evidence, the trial court did not abuse its discretion by awarding fees under OCGA § 9-15-14 (b).[19] The trial court's order, however, does not indicate how the court apportioned its award to fees generated based on Fedina's sanctionable conduct. "As we have held in cases involving OCGA § 9-15-14 (a) or (b), the trial court must limit the fees awarded to those fees incurred because of the sanctionable conduct. Thus, 'lump sum' or unapportioned attorney fees awards are not permitted in Georgia."[20] Larichev's attorney submitted an affidavit with billing statements reflecting fees and expenses totaling $13,775.

> The trial court's award of $[12],000 may have been reasonable, but the trial court's order, on its face fails to show the complex decision making process necessarily involved in reaching a particular dollar figure and fails to articulate why the amount awarded was $[12],000 as opposed to any other amount. Accordingly, we must vacate the award and remand

---

[19] See *Haggard v. Bd. of Regents of Univ. System of Ga.*, 257 Ga. 524, 527 (4) (c) (360 SE2d 566) (1987); *Ford v. Hanna*, 293 Ga. App. 863, 868 (4) (668 SE2d 271) (2008).

[20] (Punctuation omitted.) *Trotman v. Velociteach Project Mgmt, LLC*, 311 Ga. App. 208, 214 (6) (715 SE2d 449) (2011), citing *Brewer v. Paulk*, 296 Ga. App. 26, 31 (2) (673 SE2d 545) (2009).

12

for appropriate factfinding with respect to the amount of attorney fees to be assessed.[21]

*Judgment affirmed in part and vacated in part, and case remanded with direction. Barnes, P. J. and Ray, J., concur.*

---

[21] (Footnote and punctuation omitted.) *Trotman*, 311 Ga. App. at 214 (6). See also *Huggins v. Chapin*, 233 Ga. App. 109, 110 (503 SE2d 356) (1998).