**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 9, 2014**

# In the Court of Appeals of Georgia

A14A0346. CENTRAL MORTGAGE CO. v. HUMPHREY et al.     DO-020

DOYLE, Presiding Judge.

This case arises from an action filed by Central Mortgage Company ("Central") against, inter alia, Susan Humphrey a/k/a Susan D. Humphrey and David Elder,[1] asking the trial court for reformation of a deed, a declaratory judgment, or equitable reformation, relating to the conveyance of 1961 Luke Edwards Road, Dacula, Georgia, ("the property") from Humphrey to Elder. Of the $1.4 million purchase price, Central loaned $980,000 to Elder in exchange for a deed to secure debt. The trial court entered judgment in favor of Humphrey, finding that there was no meeting of the minds between Humphrey and Elder as to the portion of land being conveyed,

---

[1] Although Central initially named Wachovia Bank, N.A., Dollar Concrete Construction Co., and UMLIC VP, LLC, as parties to the lawsuit, those entities were later released from the action.

and therefore, the court declined to reform the property description. The trial court also refused to rescind the contract or direct Humphrey to repay the purchase price to Central or Elder or to grant them an equitable lien against the property.

Central appeals, arguing that the trial court erred by failing to (1) reform the property description in the deed; (2) order complete rescission of the sales contract after finding that no agreement existed; (3) award Central and Elder equitable liens equal to the consideration received by Humphrey from those parties as part of the 2003 sales transaction; or (4) pursuant to OCGA § 9-4-2, declare a new legal description of the property conveyed to Central and Elder. For the reasons that follow, we affirm.

> On an appeal from an entry of judgment following a bench trial, we apply a de novo standard of review to any questions of law decided by the trial court, but will defer to any factual findings made by that court if there is any evidence to sustain them. [Nevertheless], if the trial court makes a finding of fact which is unsupported by the record, that finding cannot be upheld and any judgment based upon such a finding must be reversed.[2]

---

[2] (Citation and punctuation omitted.) *Champion Windows of Chattanooga, LLC v. Edwards*, 326 Ga. App. 232, 233 (756 SE2d 314) (2014).

The record shows that beginning in 1992, Humphrey obtained title to various parcels of adjoining property. One parcel, which was quitclaimed to Humphrey in 1992, included 9.118 acres described as Lot 8, Block B. Another parcel was deeded to Humphrey in 1996 by Star Custom Homes (the building company of her husband Ray) and included 3.644 acres described as Lot 7, Block B, which bounded Lot 8 to the north. In addition to those lots, Ray obtained title to Lot 6, which bounded Lot 7 to the north, and Ray later conveyed title to a home and one acre from the front of that lot to another individual, but Ray kept an easement along the north side of the subdivided lot for access to Luke Edwards Road, which ran north and south along the east side of all three parcels. In May 1998, Humphrey conveyed the road frontage of Lot 7, consisting of 2 acres and a home, to her son, Thomas.[3] The legal description of that two acre parcel would later become the subject of another lawsuit after Thomas failed to pay the note on the property and the lien holder was forced to file suit to reform the legal description.[4]

[3] Testimony in the record showed that this conveyance resulted in a violation of the zoning ordinances as to Lot 7 because the back portion of the lot remaining in Humphrey's name had no frontage on the road and no other access to the road.

[4] The legal description of that piece of property was also faulty, and as a result of a suit to reform the deed, the trial court entered an order granting an equitable reformation of the deed.

In 2003, Elder, Humphrey, and Ray entered into negotiations for Elder, who is married to Humphrey's sister, to purchase Humphrey's property, which at that time consisted of Lot 8 and the westerly portion of Lot 7 that had not been conveyed to Thomas. At the time of the conveyance, the Humphreys had constructed improvements on the property, including a large main residence, a pool with an adjoining pool house and surrounding decks, a two-story garage or barn with upstairs living space, an uncompleted greenhouse, a gazebo overlooking a pond, a driveway with a roundabout in front of the residence containing a large fountain, a substantial wrought iron fence with brick columns along the road and driveway, and a sidewalk connecting the residence to the gazebo and other features. The parties agree that the transaction arose because Ray planned to develop a large condominium complex, and Elder, who worked installing various internal mechanical systems, planned to move to the Humphreys' former home and assist with the development; additionally, proceeds from the property sale would be used in the development opportunity and for the Humphreys' retirement.

In preparation for the sale, an appraisal was prepared, which assigned value to the property based on all the existing structures on the property and "10 acres +/- per

4

seller."[5] One copy of the purported sales contract, which was signed by Elder and the Humphreys,[6] stating that Elder was purchasing the existing home and +/- 10 acres for $1.4 million. Another copy of the sales contract submitted to the court by Humphrey, however, stated that Elder was purchasing the existing home and +/- 17 acres for $1.4 million. Neither of these contracts incorporated the referenced legal description of the specific property being conveyed. The parties agreed that no one surveyed the property at that time of the sale. Elder secured a loan for $980,000 from Central's predecessor in interest, and he provided the balance of the $1.4 million purchase price; it is undisputed that Humphrey took $847,133.43 at the closing.[7] The Humphreys did not attempt to divide the property or obtain an additional street address from the county subsequent to the closing.

Approximately a month after the closing, however, the business opportunity driving the transaction evaporated, and Elder did not move to the property. Instead of returning the purchase money, the parties agreed that the Humphreys would remain

---

[5] Elsewhere, this document listed the property as an 18-acre tract of land with a custom built home.

[6] Although Ray signed it, he did not have any ownership interest in the land.

[7] At least some portion of the $552,866 paid off existing liens on the property.

on the property and pay a monthly rent sufficient to cover Elder's payments on the $980,000 mortgage. This arrangement continued for approximately four years and eight months, until the Humphreys stopped paying rent, and as a result, Elder defaulted on the promissory note.

Thereafter, Central attempted to foreclose on the property, but was prevented from doing so when the Humphreys challenged the legal description in the security deed.[8] Among other things, the legal description in the deed to secure debt from Elder to Central and the warranty deed from Humphrey to Elder failed to describe a closed boundary and included some property from lots to which Elder had never held title. The description stated that the property included "[a]ll that tract or parcel of land laying [sic] . . . in Land Lot 781 . . . and being the easterly portion of lot 8, block b and a portion of lot 7." After discovering the defective legal description, the attorney who prepared the description issued a scriveners's affidavit purporting to correct the mistakes. The amended description, however, still failed to describe a closed loop of property. In the corrected description, the property was described as "[a]ll the tract

---

[8] See *Humphrey v. Central Mtg. Co.*, No. 08-A-08921-9 (Gwinnett Sup. Ct.; decided Dec. 23, 2009).

or parcel of land laying [sic] and being Land Lot 281 . . . and being a portion of Lot 7 and all of Lot 8, Block B."

Thereafter, Central filed the instant "Complaint for Reformation, Declaratory Judgment and Equitable Relief" against Humphrey and Elder. In individual counts, Central asked that (1) the trial court reform the legal description of the property; (2) the trial court enter a declaratory judgment replacing the property description as stated in the warranty deed issued by Humphrey to Elder and the security deed given by Elder to Central with the legal description provided by Central's surveyor; or (3) the trial court use its other equitable powers to replace the prior description with Central's description or "grant such other and further relief as this Court deems just, equitable[,] and proper."

At the bench trial, Central presented the testimony of Daniel F. Conroy, a land surveyor, who testified that he performed a survey of the land to determine the correct legal description of the property included in both lots, the total area of which was 10.97 acres. Conroy testified that the Humphreys had violated zoning requirements by building the main residence and portions of the pool house and decking for Lot 8 onto the required setbacks on Lot 8 and encroached onto Lot 7. Although Ray testified he had made an agreement with the original owner of Lot 7 to do so by

7

providing them with a "jog" of land in another area of the lots, this agreement and variance was not recorded with the county. Conroy testified that although there were different landscaping areas between the improvements, the various improvements were not obviously separate and appeared to be intended to remain together. Conroy prepared multiple legal descriptions regarding the lots that the court could use to declare a new legal description of the property that would resolve many of the zoning issues with the encroachments by the Lot 8 buildings onto the set-backs and Lot 7.

Additionally, the Humphreys and Elder testified about the transaction. Elder had assumed at the time of the transaction that he was buying the main house, all the improvements, and approximately ten acres of land, and he did not realize that the improvements were built on multiple lots. The Humphreys, however, believed that they were only selling the main residence and five acres and were retaining all of Lot 7 and the westerly portion of Lot 8, including the garage/barn, greenhouse, gazebo, and pool house. Humphrey explained that her understanding was that she and Ray would move into the pool house when Elder and his family moved in, and she and Ray eventually would build another house on the remainder of Lots 7 and 8. All the parties conceded that they never discussed the specifics of what was being sold but that the conversations occurred over several months.

The trial court issued an order denying the petition. In its order, the trial court found credible the Humphreys' and Elder's testimony that the parties never discussed the exact amount or location of the property they intended the transaction to include, even though the court did not find credible the Humphreys belief that they would retain the pool house. The court found that there was no meeting of the minds as to the exact property to be conveyed. The trial court found that although some extrinsic evidence supported Elder's contention that he was supposed to receive all the improvements and approximately 10 acres, the statement in the first legal description that the conveyance included only the easterly portion of Lot 8 and a portion of Lot 7 supported the Humphreys' contention that they were only conveying about 5 acres. The court concluded that it was unable to reform the legal description because there was never an agreement about the specific land based on the testimony and extrinsic evidence.

1. Central argues that the trial court erred by denying their request to reform the property description in the deed based on the mutual mistake of Humphrey and Elder at the time of the conveyance. We disagree.

> Perfection in legal descriptions of tracts of land is not required. If the premises are so referred to as to indicate the grantor's intention to

9

convey a particular tract of land, extrinsic evidence is admissible to show the precise location and boundaries of such tract. The test as to the sufficiency of the description of property contained in a deed is whether or not it discloses with sufficient certainty what the intention of the grantor was with respect to the quantity and location of land therein referred to, so that its identification is practicable.[9]

"In all cases where the form of the conveyance or instrument is, by mutual mistake, contrary to the intention of the parties in their contract, equity will interfere to make it conform thereto. In such cases the negligence of the party complaining will not defeat his right to reformation, if the other party has not been prejudiced thereby."[10]

In this case, the trial court determined that the Humphreys and Elder failed to reach a meeting of the minds with regard to the actual land and improvements being conveyed by Humphrey to Elder through the sale.[11] The trial court specifically

[9] (Punctuation omitted.) *Ceasar v. Wells Fargo Bank, N.A.*, 322 Ga. App. 529, 531 (1) (744 SE2d 369) (2013), quoting *Lawyers Title Ins. Corp. v. Nash*, 196 Ga. App. 543, 544 (1) (396 SE2d 284) (1990).

[10] (Punctuation omitted.) *Aames Funding Corp. v. Henderson*, 275 Ga. App. 323, 324 (620 SE2d 503) (2005).

[11] See *Vance v. Jackson*, 233 Ga. App. 480, 481-482 (1) (504 SE2d 529) (1998) (upholding trial court's decision not to reform the deed in which faulty legal description was the result of a survey error).

10

determined that Susan, Ray, and Elder were credible, and it determined that the extrinsic evidence in the form of the appraisal, sales contracts, and faulty legal descriptions supported each of the parties' contentions (or in some instances, neither parties' contentions). That another trier of fact would have come to a different conclusion in the first instance based on the testimony and perception of credibility of the witnesses does not require reversal of the trial court.

Although Central contends the trial court's determination is erroneous because the deeds and legal description contained a sufficient key to determine the property being conveyed, we disagree. If this were a case in which is was clear that the parties intended to make a full conveyance of Lot 8 or a full conveyance of Humphrey's adjoining property, the failure of the legal description would not have been problematic because the mere reference to the mailing address and lot would have been sufficient to determine the land and reform the deed thereto. But the legal description states only the easterly portion of Lot 8 was to be conveyed as well as a portion of Lot 7, and there was no error in the trial court's determination that Central failed to establish a sufficient number of keys in the description and parol evidence

11

"to fix with certainty the indefinite courses and distances" of an intended conveyance.[12]

For the same reasons, there is no merit to Central's argument that the trial court should have reformed the deeds based on the five-acre conveyance about which the parties are in agreement. Although both the Humphreys testified that they believed the transaction related to five acres and the main home and pool, Ray and Humphrey both described different portions of the tract that they believed were being conveyed. As for Elder, although he stated he thought he was purchasing at least five acres, he understood the conveyance to include all of the improvements, which are over a much larger area than five acres. Accordingly, evidence supported the trial court's denial of the petition to reform the deed.

2. Alternatively, Central argues that the trial court erred by failing to rescind the sales contract after determining that there was no meeting of the minds between Elder and Humphrey. We disagree.

"Equity seeks always to do complete justice; and hence, having the parties before the court rightfully, it will proceed to give full relief to all parties in reference

---

[12] *Wisener v. Gulledge*, 251 Ga. 419, 422 (306 SE2d 642) (1983).

to the subject-matter of the suit, provided the court has jurisdiction for that purpose."[13] Nevertheless, Central specifically argued to the trial court that

> Humphrey and Elder have made no showing that they are capable of complying with a rescission and the consequences of a complete undoing of the transaction with the funds being returned, [Central] does not agree that [Humphrey's and Elder's] recommended rescission presents a viable relief to any of the [parties]. Furthermore, neither [defendant] sought relief via a rescission in their responses to [Central's] [c]omplaint. Moreover, if a rescission was sought by the [defendants], the prior lien holder would be a necessary party to this civil action in order to account for the reinstatement of the prior lien and return of the payoff received from the 2003 transaction.

Because Central argued against rescission before the trial court, it cannot now complain of the trial court's denial of the relief.[14] Accordingly, this enumeration is without merit.[15]

---

[13] (Punctuation omitted.) *Martin v. Oakhurst Dev. Corp.*, 197 Ga. 288, 294 (3) (29 SE2d 179) (1944).

[14] See *Martin v. Hamilton State Bank*, 323 Ga. App. 185, 189-190, n.18 (1) (746 SE2d 750) (2013) ("[A] litigant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal.") (punctuation omitted).

[15] To the extent that Elder contends that this Court should rescind the contract and grant him a lien against the property in the amount of $1.4 million from which he may then reimburse Central, we considered this argument only to the extent it was material to Central's enumeration of error because Elder failed to file a proper cross-

13

3. Central also argues that the trial court erred by failing to award Central and Elder an equitable lien on the property in an amount equal to the consideration Humphrey accepted as part of the sale.

Citing *Chapple v. Hight*,[16] Central contends that the trial court erred by failing to grant it a special lien against Humphrey's property because the circumstances and equity require it. Nevertheless, *Chapple* was a case in which the plaintiff sought to enjoin the defendant from cutting timber prior to the conclusion of the plaintiff's suit on the contract against the defendant. Here, Central had a remedy against Elder for his breach of the promissory note. Additionally, Central could have asked for a rescission of the contract before the trial court. Central has failed to show that the trial court erred by declining to grant such a lien.

4. Finally, Central argues that the trial court erred by declining to set the boundary lines of the property conveyed by Humphrey to Elder and Central via its declaratory judgment powers. Nevertheless, we discern no error in the trial court's

_____

appeal alleging error on the part of the trial court. See OCGA § 5-6-38; *Truelove v. Buckley*, 318 Ga. App. 207, 212-213 (2) (733 SE2d 499) (2012).

[16] 161 Ga. 629, 632 (1) (131 SE 505) (1926) ("[A]s a general rule[,] courts can not create liens; and yet a special lien on specific property may be decreed whenever under the rules of equity the circumstances require this remedy.").

14

decision. Elder and Central have contractual remedies available, and Central failed to establish error on the part of the trial court for declining to reform the deed. That Central may have elected this route because it calculated that recovery of a money judgment would be unsuccessful does not mean that the trial court's decision requires reversal.

*Judgment affirmed. Miller and Dillard, JJ., concur.*