**SECOND DIVISION**
**MILLER, P. J.,**
**DOYLE, P. J., and REESE, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 1, 2018**

# In the Court of Appeals of Georgia

A17A1640. THE BANK OF NEW YORK MELLON et al. v. DO-062 EDMONDSON et al.

DOYLE, Presiding Judge.

Jerome Edmondson refinanced property he owned with his wife, Alena. The Bank of New York Mellon ("Mellon") filed this action against the Edmondsons seeking to: replace an original security deed that was allegedly executed at the closing and lost prior to recordation and reformation of the county records to reflect the replacement deed; a declaratory judgment; or a first priority equitable lien against the Edmondsons's interest in the property. Following a bench trial, the trial court found that the Edmondsons's signatures on the replacement deed filed by Mellon were forged and that Mellon's claim for an equitable lien was therefore barred by the doctrine of unclean hands, ruling in favor of the Edmondsons and awarding them

attorney fees in the amount of $9,000. Mellon appeals, arguing that the trial court erred by denying its request for equitable relief and by awarding attorney fees to the Edmondsons.[1] For the reasons that follow, we affirm in part and reverse in part.

> On an appeal from an entry of judgment following a bench trial, we apply a de novo standard of review to any questions of law decided by the trial court, but will defer to any factual findings made by that court if there is any evidence to sustain them. Nevertheless, if the trial court makes a finding of fact which is unsupported by the record, that finding cannot be upheld and any judgment based upon such a finding must be reversed.[2]

So viewed, the record shows that in 2003, the Edmondsons purchased a home in DeKalb County ("the Property") with a loan agreement with Homebanc Mortgage, which mortgage was secured by a security deed against the Property. On May 24, 2007, Jerome refinanced the loan with Countrywide Home Loans, Inc., to obtain a more favorable interest rate. At the closing, Jerome executed a promissory note ("the

---

[1] Mellon filed a notice of appeal to the Supreme Court of Georgia on December 1, 2016. The Supreme Court transferred the case to this Court, finding that its jurisdiction over equity cases was not invoked because "the availability of equitable relief is ancillary to the resolution of the underlying legal or factual issues."

[2] (Punctuation omitted.) *Central Mtg. Co. v. Humphrey*, 328 Ga. App. 474, 475 (759 SE2d 896) (2014).

Note") in favor of Countrywide; Alena did not attend the closing and was not listed as a borrower on the Note, nor did she sign any documentation associated with the refinance.[3] The Note provided that it was secured by a mortgage, deed of trust, or a security deed dated the same day as the Note. Jerome conceded at the subsequent trial that there should have been a security deed executed at the closing and that he intended for the Property to be used as collateral for the Note. Jerome, however, testified that he did not sign a security deed at the closing.[4]

A month or so after the closing, Jerome received a letter from the closing attorney asking him "to come back" and sign the security deed. Jerome went to the closing attorney's office to do so, but the attorney told him he no longer represented Countrywide. Jerome then contacted his mortgage broker, who told him that if the bank failed to obtain a security deed "that's on them." Jerome testified that he never signed a security deed to secure the Countrywide refinance. According to Jerome, he later attempted to enter into a loan modification with Countrywide and then Bank of America, which had purchased the loan, but was unsuccessful because there was no

---

[3] In connection with the closing, Countrywide paid off the Homebanc loan, and the Homebanc security deed was canceled.

[4] According to Jerome, he believed the closing was completed properly, and he had "[no] indication regarding [any issues regarding] the security deed at that time."

security deed on the Property. He also received a call from the DeKalb County Clerk's office advising him that someone was requesting to "force" a security deed into the records for the Property.

On July 3, 2007, Nations Title Agency of Georgia, Inc., recorded an "Affidavit of Lost/Misplaced Deed for Recording." Attached to the affidavit was a copy of a security deed for the Property, which deed was dated May 24, 2007, and contained the purported signatures of both Edmondsons. On February 9, 2012, the security deed was transferred to Mellon via a recorded assignment.

On April 30, 2013, Mellon filed this action against the Edmondsons, the Georgia Department of Labor ("the DOL"), and American Express Bank, FSB, seeking to reform the deed records and a declaratory judgment establishing a security deed to the property in the first priority secured position.[5] Mellon indicated therein that the Edmondsons had executed the security deed at closing, but that the deed had been "lost prior to recording"; attached to the complaint was a copy of the security deed purportedly signed by both Edmondsons.

On February 14, 2014, the Edmondsons filed an answer, denying that they signed the security deed attached to the complaint, asserting a counterclaim alleging

[5] The DOL and American Express had recorded liens against the Property.

4

that Mellon conveyed "a fraudulently forged" security deed, and seeking attorney fees and expenses of litigation. On May 4, 2015, Mellon amended its complaint to add a claim for a first priority equitable lien against the Edmondsons' interest in the Property, "coupled with a power of nonjudicial sale and all other terms of the [s]ecurity [d]eed, effective as of July 3, 2007." Thereafter, Mellon moved for summary judgment, and the trial court denied the motion.

The case proceeded to a bench trial, at which both Jerome and Alena testified that only Jerome attended the refinance closing and that neither of them signed the security deed containing their purported signatures. At the conclusion of the evidence, the trial court ruled in favor of the Edmondsons, finding that the undisputed evidence showed that the security deed attached to the affidavit of lost/misplaced deed was not signed by the Edmondsons, and the deed was "a forged document."[6] The court then concluded that because the security deed was forged, Mellon's claim for an equitable

---

[6] On January 7, 2014, the DOL was dismissed without objection by Mellon in an order declaring the security deed recorded on July 3, 2007, "valid, enforceable[,] and in a first priority security position against the Property." On September 18, 2015, the trial court entered a default judgment against American Express, which did not file an answer, declaring therein that the recorded security deed "is a true and correct copy of the terms and conditions of the [s]ecurity [d]eed intended to be recorded against the Property," establishing it upon the deed records "in full force and effect as if it were the original [s]ecurity [d]eed," and declaring it "to be valid, enforceable[,] and in a first priority secured position in favor of [Mellon]."

5

lien or equitable subrogation was barred by the doctrine of unclean hands, and Mellon "did not avail itself of the proper legal remedies upon discovering the . . . [s]ecurity [d]eed was not recorded, and therefore, is chargeable with inexcusable and/or culpable neglect." The court also awarded the Edmondsons $9,000 "for their reasonable attorney[] fees in defending this matter."

1. *Equitable relief.* Mellon contends that the trial court erred by denying its claim for a first priority equitable lien against the Edmondsons' interest in the property or for equitable subrogation. We disagree.

Mellon does not challenge the trial court's failure to grant its request for reformation of the security deed or for a declaratory judgment related thereto. Thus, the only remaining claims are Mellon's claims for equitable relief, which the trial court found to be barred by the doctrine of unclean hands.

> "Unclean hands" is a shorthand reference to OCGA § 23-1-10, which states, "[h]e who would have equity must do equity and must give effect to all equitable rights of the other party respecting the subject matter of the action." OCGA § 23-1-10 embodies both the "unclean hands" doctrine and the concept that one will not be permitted to take advantage of his own wrong. However, relief is precluded only if the inequity so infects the cause of action that to entertain it would be violative of conscience. The inequity must relate directly to the transaction concerning which complaint is made. The rule refers to

6

equitable rights respecting the subject-matter of the action. It does not embrace outside matters.[7]

Here, the trial court found that the filed copy of the security deed bearing the purported signatures of the Edmondsons was forged, and we defer to that factual finding because it is supported by the record.[8] This evidence supports the trial court's conclusion that Mellon had unclean hands, and the wrongdoing directly relates to the equitable relief it seeks — to establish the security deed.[9] To permit Mellon to prevail on its subsequent claims for equitable relief based on a deed that it forged "would be violative of conscience." Accordingly, the trial court did not err by rejecting Mellon's claims for equitable relief.[10]

---

[7] (Punctuation omitted.) *Fedina v. Larichev*, 322 Ga. App. 76, 78-79 (1) (744 SE2d 72) (2013), quoting *Goodson v. Ford*, 290 Ga. 662, 666 (5) (725 SE2d 229) (2012).

[8] See *Central Mtg. Co.*, 328 Ga. App. at 475.

[9] See *Fedina*, 322 Ga. App. at 79 (1).

[10] (Punctuation omitted.) *Fedina*, 322 Ga. App. at 79 (1); *Murawski v. Roland Well Drilling*, 188 Ga. App. 760, 765-766 (2) (374 SE2d 207) (1988).

2. *Attorney Fees*. Mellon also argues that the trial court erred by awarding the Edmondsons $9,000 "for their reasonable attorney[] fees in this matter. . . ." We agree.

The trial court failed to identity the statutory basis for or to set forth factual findings underlying the award.[11] Pretermitting whether there was a proper basis for the award, there does not appear to be any evidence in the record of the attorney fees incurred by the Edmondsons or the reasonableness thereof.[12] Thus, we reverse the award of attorney fees.[13]

*Judgment affirmed in part and reversed in part. Miller, P. J., and Reese, J., concur.*

---

[11] Our review of the record reveals that the only request for attorney fees by the Edmondsons is contained in their answer, which fails to specify the statutory basis for an award and simply requests "reasonable attorney[] fees and expenses of litigation for their representation during the course of this proceeding."

[12] The only reference to attorney fees at trial is a statement by the Edmondsons's attorney during closing argument that they incurred costs "upwards of $9,000" in defending the case.

[13] See *Landry v. Walsh*, 342 Ga. App. 283, 286-287 (2) (801 SE2d 553) (2017) (reversing attorney fee award because the trial court failed to identify the statutory basis for or the conduct underlying the award, and the appellee failed to present evidence of fees related to sanctionable conduct).