**THIRD DIVISION**
**DOYLE, P. J.,**
**DILLARD, P. J. and PADGETT, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

June 27, 2025

# In the Court of Appeals of Georgia

A25A0606. BRICE v. SSA NE ASSETS, LLC.

DOYLE, Presiding Judge.

Following a bench trial, the court entered an amended final judgment partially in favor of Krayla Brice, finding that Georgia Property Tax Solutions, LLC; ("GPTS") Allen S. Pendergrass; Ashley N. Hayes; Chundra Vinicke Scott; (collectively, "the GPTS defendants") and Brice's mother — Sowaya — had forged a warranty deed conveying Brice's real property to GPTS, which had then obtained a loan secured by the property. The court also granted relief as to some of the counterclaims filed by SSA NE ASSETS, LLC ("SSA"), which had purchased the deed to secure debt taken for GPTS's loan after Brice's instant suit was filed. Brice appeals, arguing that the trial court erred by granting SSA's counterclaims for a

declaratory judgment in the form of equitable subrogation and judicial foreclosure, for unjust enrichment, and for an equitable lien. For the reasons that follow, we reverse.

On an appeal from an entry of judgment following a bench trial, we apply a de novo standard of review to any questions of law decided by the trial court, but will defer to any factual findings made by that court if there is any evidence to sustain them. Nevertheless, if the trial court makes a finding of fact which is unsupported by the record, that finding cannot be upheld and any judgment based upon such a finding must be reversed.[1]

Viewed in this light, the record shows that Brice was living in Atlanta in 2011, and in 2012, at the insistence of her grandmother, she purchased the property as sole owner with cash provided from an account co-owned by her grandmother and Sowaya. Based on her testimony, Brice's extended family is heavily involved with supporting one another, including financially, and during the early years of owning the property, Brice's uncles helped make repairs and upgrades to the house. Brice has lived in Atlanta only occasionally since the purchase. Although she contributed money to paying utilities, usually other family members paid utilities, taxes, and insurance on

---

[1] (Punctuation omitted.) *Bank of New York Mellon v. Edmondson*, 344 Ga. App. 823, 823-824 (812 SE2d 299) (2018), quoting *Central Mtg. Co. v. Humphrey*, 328 Ga. App. 474, 475 (759 SE2d 896) (2014).

the property. Many of Brice's extended family members, but mainly Sowaya, lived at the property at various times between 2013 and 2020; no loan was ever taken on the property from the 2012 purchase and the incident at issue.

In 2019, Brice's mother, Sowaya, lived at the property, and Brice lived in Massachusetts attending culinary school. Sowaya met Pendergrass at a tax lien seminar that spring, and she began working with him in his real estate businesses; through Pendergrass, Sowaya also met Scott and Pendergrass's daughter, Hayes. To work with Pendergrass, Sowaya's sister wired her $20,000 to invest in the formation of GPTS. Sowaya also became a notary public at Pendergrass's behest.

In late 2019 or early 2020, Sowaya told Brice that she wanted to make some renovations to the property and use it for short-term rentals, telling Brice that Pendergrass would assist in the endeavor. Sowaya, however, did not tell Brice that she was going to use the property as security for any loan to fund the improvements, and based on the family's past cash-based renovations, Brice believed that any renovation would be funded the same way. Brice also believed that Sowaya was working on multiple properties through Pendergrass's businesses and was paying for the property renovations herself. During Sowaya's and GPTS's partnership, Brice occasionally

spoke on the phone to Pendergrass at Sowaya's insistence for advice about Brice's culinary businesses. During their discussions, Pendergrass never discussed with Brice purchasing her property, nor did he discuss Sowaya's renovations or the source of funds for them.

Meanwhile, GPTS was formed in July 2019 with Hayes listed as the registered agent and Scott as the organizer; Pendergrass and Sowaya had interests in the company. In July 2019, a warranty deed purportedly signed by Brice, witnessed by Scott, and notarized by Sowaya, granted Brice's real property to GPTS and was filed in the Fulton County property records the following August ("the Forged Deed"). The Forged Deed purportedly granted the property to GPTS for $50,000 — significantly less than the fair market value at the time. In December 2019, GPTS obtained a loan from MoFin Lending Corporation for $149,000 ("MoFin loan"), which Hayes personally guaranteed, in exchange for a note from GPTS and a deed to secure debt on Brice's property. At the time the MoFin loan closed, certain tax liens and a watershed management lien were paid off. At no time did Brice transfer ownership of the property to Sowaya, authorize Sowaya to transfer ownership of the

property to GPTS or Pendergrass, or otherwise approve of the transfer or using the property as collateral for the MoFin loan.

In early 2021, Brice became aware that something had happened with the house. Pendergrass called her and said "they needed to get the loan paid back," but Brice was unaware of any loan and called Sowaya, who told her to return to Atlanta. Brice did so for the first time since the renovations had started, and Sowaya explained to her that Pendergrass and Hayes had taken out a loan on the house that needed to be paid back or foreclosure proceedings would commence. Brice contacted real estate attorneys to prevent the foreclosure, at which point an attorney explained to her that she was no longer the titled owner of the property, which had sold for $50,000 in July 2019.[2] When she saw the Forged Deed, Brice recognized the notary signature as being Sowaya's signature, but she did not recognize her forged signature as being in Sowaya's handwriting; Brice believed that Pendergrass had completed the forgery unbeknownst to Sowaya.

---

[2] On March 4, 2021, GPTS obtained a loan from Urban Capital Alliance, LLC, for $499,999, executing a second security deed on the property. Apparently, there was never actually an exchange of funds for this purported security deed, and Brice dismissed without prejudice her claims against Urban Capital Alliance after they cancelled their security deed.

On March 19, 2021, Brice brought a claim for quiet title and alleged a claim of forgery against GPTS, Pendergrass, Hayes, and Scott.[3] Brice asked to have the Forged Deed set aside such that she was restored as the property owner, removing all mortgages, liens, and other clouds of title placed on the property, as well as asserting claims for punitive damages, attorney fees, and costs.[4] The GPTS defendants answered, filed counterclaims against Brice for an equitable lien and unjust enrichment, and filed a third-party complaint against Sowaya, asserting claims of forgery, contribution and indemnity, fraud, and requesting punitive damages against her. Brice also filed a lis pendens in the property record to indicate that litigation was ongoing with the property.

After Brice's action was filed, the first priority security deed was assigned from MoFin to other purchasers until October 2021, when SSA became the owner of the MoFin loan security deed, GPTS note, and Hayes's personal guarantee, and Brice

---

[3] According to the amended final order, the Court struck Scott's pleadings (including her answer and counterclaims) for failure to appear for trial and entered a default judgment against her.

[4] Brice amended her complaint several times, first adding JAFW, aka Jefferies LLC, and Urban Capital Alliance, LLC, as defendants. JAFW later assigned its interest to Flatiron Realty Company, which was added as a party and then dropped when it assigned its interest to SSA.

added SSA as a party in her third amended complaint. SSA answered, adding counterclaims against Brice for unjust enrichment and requesting an equitable lien and equitable subrogation of any lien or charge that it discharged, requested costs; and asserted cross-claims: (1) against GPTS for breach of the note; (2) against Hayes for breach of the guarantee; (3) unjust enrichment against the GPTS defendants; (4) attorney fees and expenses under the note and guarantee against GPTS and Hayes; (5) breach of contract and conspiracy against the GPTS defendants and Sowaya; (6) indemnity against GPTS; (7) fraud and conspiracy against the GPTS defendants and Sowaya; (8) punitive damages against the GPTS defendants and Sowaya; and (9) expenses against the GPTS defendants and Sowaya.

SSA moved for partial summary judgment against GPTS and Hayes for breach of the note and guarantee and for costs; and against Brice for equitable subrogation and for an equitable lien. After a hearing, the trial court granted in part the motion as to the breach of note and breach of guarantee claims against Hayes and GPTS — awarding $253,516.47 including principal, interest, and fees — but it found disputed material facts precluded summary judgment as to the equitable subrogation and equitable lien counterclaims against Brice.

Before trial, SSA dismissed its counterclaim for attorney fees and expenses of litigation against Brice, and dismissed all its remaining cross-claims against Sowaya, GPTS, Pendergrass, Hayes, and Scott for unjust enrichment, breach of contract and conspiracy to breach contract, indemnity, fraud and conspiracy to defraud, punitive damages, and attorney fees and expenses.

During trial, Sowaya and the GPTS defendants all admitted to participating in GPTS, and the GPTS defendants testified that they and Sowaya had prepared the Forged Deed together. Sowaya denied forging Brice's signature, and she denied agreeing to sell the property to GPTS or to take a loan out, instead contending that she meant to renovate the home for use as a short-term rental. The GPTS defendants testified that the plan was to sell the property after renovation, that Sowaya forged Brice's signature, and that Sowaya represented that she was authorized to sell the property (despite knowledge of the 2012 warranty deed to Brice only, no power of attorney document, and no discussion with Brice prior to the forgery). The GPTS defendants assumed that because Sowaya was Brice's mother the forgery was authorized. Uniform among the testimony of Sowaya, the GPTS defendants, and

Brice was that Brice was unaware of the forgery and MoFin loan until 2021, just prior to the institution of the suit.

After the bench trial, the court entered an order finding that Sowaya and the GPTS were parties to the forgery, but Brice was not aware of the transfer, did not authorize the transfer, and did not ratify the forgery even though she was aware that there were some renovations occurring on the property. Based on this finding, the court ruled in favor of Brice on her forgery count (except as to SSA because it was not involved in the scheme). The trial court granted in part Brice's quiet title claim, canceling the Forged Deed and MoFin security deed. The court denied Brice's punitive damages claim, but awarded her attorney fees and expenses against the GPTS defendants in the amount of $58,822.88.[5] The court denied the GPTS defendants' claims against Brice for an equitable lien, unjust enrichment, and attorney fees and expenses based on their participation in the forgery.

The court also found that participation in the forgery precluded the GPTS defendant's third-party claims against Sowaya for forgery and fraud. The court denied their claim against Sowaya for contribution and indemnity because SSA's money

_____

[5] Brice did not assert claims against Sowaya.

judgments against Hayes and GPTS were based on the MoFin note and guarantee, to which agreements Sowaya was not a party. Because the GPTS defendants were unsuccessful in their claims against Sowaya, the trial court denied their requests for punitive damages, attorney fees, and costs against her.

Finally, the court granted SSA's claim for a declaratory judgment for equitable subrogation to a first priority lien for the approximate $6,900 pay off of the watershed management and tax liens present on the property at the time of the MoFin loan, granted SSA's unjust enrichment claim against Brice for $168,000 for the improvements made to the property, and granted SSA's claim for an equitable lien on the property in the amount of $168,000.[6] Brice appeals from the trial court's order. No cross-appeals were filed.

1. Brice argues that the trial court erred by granting SSA's claims against her. We agree.

As an initial matter,

[a]s a general rule, a bona fide purchaser for value is protected against outstanding interests in land of which the purchaser has no notice. [The

___

[6] The court's equitable lien and equitable subrogation grants provided rights of judicial foreclosure.

Supreme Court of Georgia has] long held that a grantee in a security deed who acts in good faith stands in the attitude of a bona fide purchaser, and is entitled to the same protection. But [the Court has] also long recognized that a forged deed is a nullity and vests no title in a grantee. As such, even a bona fide purchaser for value without notice of a forgery cannot acquire good title from a grantee in a forged deed, or those holding under such a grantee, because the grantee has no title to convey. [7]

The trial court specifically found that the GPTS defendants and Sowaya forged the deed from Brice to GPTS and that Brice was not aware of the forgery and did not ratify the act, cancelling the Forged Deed and MoFin security deed. The cancellations were proper because a forged deed is a nullity.[8] Therefore, SSA's claim to any security interest as a result of purchasing the MoFin security deed was also a nullity, and it was not due a security position based thereon.

---

[7] (Citations and punctuation omitted.) *Brock v. Yale Mtg. Corp.*, 287 Ga. 849, 852 (2) (700 SE2d 583) (2010).

[8] See id. See also *Aurora Loan Svcs., LLC v. Veatch*, 288 Ga. 808, 809 (710 SE2d 744) (2011) ("it is of no moment whether the deed records provided notice of the forgeries at the time [the first bona fide purchaser for value] executed the security deed on which [the appellant] bases its claim; there was simply no title held by [the first bona fide purchaser for value or] any subsequent assignee").

Despite this, the trial court granted SSA against Brice an equitable lien as to the amount of the MoFin loan, equitable subrogation to the lien positions of the tax and watershed management liens paid off by the MoFin loan, and a money judgment for unjust enrichment for the amount of the MoFin loan.[9] These awards were erroneous.

"[E]quity will not grant relief where there is an adequate and complete remedy at law."[10] In this case, SSA had an adequate remedy at law.[11] First, prior to trial, SSA was awarded a money judgment for the loan amount, interest thereon, as well as attorney fees and costs against GPTS and Hayes when the trial court granted summary judgment on the note and guarantee. This amount included the payoff of the property

---

[9] A more thorough discussion of the unjust enrichment award is contained in Division 2, infra.

[10] (Punctuation omitted.) *Coleman v. Retina Consultants, P.C.*, 286 Ga. 317, 322 (3) (687 SE2d 457) (2009) (explaining that the plaintiff had "an adequate and complete remedy at law . . . because it could recover money damages" from the defendant in the event that the defendant removed funds that rightfully belonged to the plaintiff from the parties' LLC; therefore, "the equitable relief granted by the trial court was inappropriate"). See also *Vatacs Group, Inc. v. U.S. Bank, N.A.*, 292 Ga. 483, 485 (2) (738 SE2d 83) (2013).

[11] See *Coleman*, 286 Ga. at 322 (3). See also *Bank of Danielsville v. Seagraves*, 167 Ga. App. 135, 142 (305 SE2d 790) (1983) ("Resort to an equitable remedy [in this case, equitable subrogation] is not available where the party knowingly refuses to avail itself of its complete legal remedy [in this case, a claim for breach of contract].") (physical precedent only).

tax and watershed management liens. In addition to the judgment in its favor, SSA had pending legal claims against Sowaya and the GPTS defendants that it dismissed after the entry of partial summary judgment. Failure to pursue legal claims prohibits the application of equitable remedies.[12] SSA's arguments that these legal remedies are inadequate are of no moment — it did not bargain for security positions because the security positions at issue were void, and the money judgment it has already received (or the avenues for money judgment it declined to exercise) are adequate remedies for the value of the MoFin loan, including the amount used to pay off the other liens.[13]

2. As with Division 1, SSA's unjust enrichment claim was not due to be granted because it had an adequate remedy at law.[14] "The theory of unjust enrichment is

---

[12] See, e.g., *Eastside Recovery, LLC v. Calhoun*, 368 Ga. App. 385, 390 (3) (890 SE2d 135) (2023), citing *Cantrell v. Henry County*, 250 Ga. 822, 824 (1) (301 SE2d 870) (1983). See also *Seagraves*, 167 Ga. App. at 142.

[13] Compare *Southern Healthcare Systems, Inc. v. Health Care Capital Consolidated, Inc.*, 273 Ga. 834, 836 (6) (545 SE2d 882) (2001) (inadequate legal remedy aside from equitable enforcement of contract provision requiring role in approval of management selection); *Sherrer v. Hale*, 248 Ga. 793, 797-798 (2) (285 SE2d 714) (1982) (no legal remedy for plaintiff's loss of role as director and secretary of a corporation).

[14] See *Calhoun*, 368 Ga. App. at 390 (3) (applying this concept to an unjust enrichment claim).

basically an equitable doctrine that the benefitted party equitably ought to either return or compensate for the conferred benefits when there was no legal contract to pay."[15] "Inherent in the theory of unjust enrichment is the requirement that the receiving party knew of the value being bestowed upon him by another and failed to stop the act or to reject the benefit prior to its conferment."[16] "The theory of unjust enrichment applies when as a matter of fact there is no legal contract, but where the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefit[t]ed party equitably ought to return or compensate for."[17] Nevertheless,

> the law implies a promise to pay for a benefit conferred by one party upon another only where the benefit is accepted by the latter. Where money is paid on the debt of another by a person who is under no legal or moral obligation to pay the debt, and he does not do so at the instance, request, or consent of the debtor, and the debtor does not ratify his act

---

[15] *Hollifield v. Monte Vista Biblical Gardens, Inc.*, 251 Ga. App. 124, 130 (2) (c) (553 SE2d 662) (2001).

[16] (Citation and punctuation omitted.) Id. at 131 (2) (c), quoting *Reidling v. Holcomb*, 225 Ga. App. 229, 232 (2) (483 SE2d 624) (1997). See also *Campbell v. Ailion*, 338 Ga. App. 382, 387 (2) (790 SE2d 68) (2016).

[17] (Citation and punctuation omitted.) *Ga. Tile Distrib. Inc. v. Zumpano Enterprises Inc.*, 205 Ga. App. 487, 488 (1) (422 SE2d 906) (1992).

as one done in his behalf, or does not otherwise become liable therefor, it is a voluntary payment, and the person making the payment cannot recover from the debtor.[18]

The undisputed evidence in this case established that Brice in no way knew about the loan and in no way authorized Sowaya or the GPTS defendants to improve the property through proceeds of a loan. SSA attempts to rely on Sowaya's acts or Sowaya's supposed role as Brice's agent to support its claims that Brice induced and accepted the improvements.[19] But the trial court found that Sowaya and the GPTS defendants engaged in a fraudulent act against Brice, and thus, it was error to impute Sowaya's actions to establish unjust enrichment as to Brice. Moreover, SSA had contract claims and received a judgment against GPTS and Hughes for the full value

---

[18] (Citations and punctuation omitted.) *Ginsberg v. Termotto*, 175 Ga. App. 265, 267 (1) (333 SE2d 120) (1985).

[19] To the extent that Brice believed that Sowaya was completing the renovations herself and SSA seeks to transfer this knowledge into support for its unjust enrichment claim, the implied promise to pay the reasonable value of services or property transferred and accepted "does not usually arise in cases between very near relatives." OCGA § 9-2-7.

of the improvements to Brice's home, and on this basis alone, the trial court should have denied the unjust enrichment claim against Brice.[20]

> [T]the first maxim of equity is that equity follows the law. Thus, a court of equity has no more right than a court of law to act on its own notion of what is right in a particular case. Where rights are defined and established by existing legal principles, they may not be changed or unsettled in equity. Although equity does seek to do complete justice, it must do so within the parameters of the law.[21]

*Judgment reversed. Dillard, P.J., and Padgett, J., concur.*

---

[20] See, e.g., *Marvin Hawatt Enterprises, Inc. v. Butler Capital Corp.*, 328 Ga. App. 317, 322-323 (4) (761 SE2d 857) (2014) ("Where there is an express contract, there can be no recovery based upon an unjust enrichment theory.").

[21] (Punctuation omitted.) *Northlake Manor Condo. Assn., Inc. v. Harvest Assets, LLC*, 345 Ga. App. 575, 582 (2) (812 SE2d 658) (2018), quoting *Hopkins v. Virginia Highland Assn.*, 247 Ga. App. 243, 249 (1) (541 SE2d 386) (2000).